BOURNEWOOD HOSPITAL, INC. *vs.* MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION & another.[1]

Norfolk. May 5, 1976. — November 4, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Anti-Discrimination Law. Damages,* Under anti-discrimination law, Counsel fees, For emotional distress.

The Massachusetts Commission Against Discrimination erred in awarding attorney's fees to a successful litigant in as much as G. L. c. 151B, § 5, does not explicitly grant the commission the power to make such awards and this court rejected the "private attorney general" rationale for awarding attorney's fees to public interest litigants. [307-313]

A finding that an employer retaliated against an employee who had filed a complaint with the Massachusetts Commission Against Discrimination, which was based on substantial evidence, warranted an award of damages for the employee's emotional distress, pain and suffering which resulted from the retaliation. [313-317]

In reviewing an order of the Massachusetts Commission Against Discrimination, a judge did not exceed the scope of his authority by modifying the commission's order with respect to the length of time a complainant should have received an increased rate of pay. [317-318]

BILL IN EQUITY filed in the Superior Court on October 12, 1973.

The suit was heard by *Brogna,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert S. Cohen* for Ellen J. Silberberg, intervener.
*William B. Baker* for Bournewood Hospital, Inc.

---

[1] Ellen J. Silberberg, complainant in the proceedings before the Massachusetts Commission Against Discrimination (MCAD), was allowed

*Francis X. Bellotti,* Attorney General, *& Patricia C. Gunn,* for the Commonwealth, amicus curiae, submitted a brief.

HENNESSEY, C.J.    On October 28, 1970, Ellen J. Silberberg filed a complaint (the first complaint) with the Massachusetts Commission Against Discrimination (MCAD), in which she alleged that Bournewood Hospital, Inc. (Bournewood or the hospital), was discriminating against her on the basis of sex in violation of G. L. c. 151B, § 4, cl. 1.[2] In the first complaint, Silberberg claimed that she was being paid ten cents an hour less than male occupational therapist assistants at Bournewood who were performing the same tasks for the hospital as she. On September 22, 1971, Silberberg filed a second complaint with the MCAD, this time charging the hospital with a violation of G. L. c. 151B, § 4, cl. 4,[3] based on Bournewood's alleged retaliatory action in offering Silberberg, after the filing of the first complaint, a promotion to head of the occupational therapy department at no increase in salary beyond the rate of compensation she had been receiving as an occupational therapist assistant.

Public hearings on both complaints were held before a Commissioner of the MCAD in September and November, 1972. Based on the testimony of the witnesses who ap-

---

to intervene in the proceedings before a judge of the Superior Court on the plaintiff's petition for review of the order of a single Commissioner of the MCAD. She, but not the MCAD, whose motion to withdraw its appeal from the judgment of the Superior Court was allowed by a Justice of the Appeals Court, prosecutes this appeal. The Attorney General of the Commonwealth filed a brief as amicus curiae urging affirmance of the single Commissioner's order awarding damages to Silberberg for emotional distress and pain and suffering.

[2] General Laws c. 151B, § 4, as amended through St. 1965, c. 397, § 4, provides in pertinent part: "It shall be an unlawful practice: 1. For an employer, by himself or his agent, because of the . . . sex . . . of any individual . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

[3] General Laws c. 151B, § 4, provides in part: "It shall be an unlawful practice: . . . 4. For any . . . employer . . . to . . . discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint . . . ."

peared before him, the Commissioner was of opinion that Bournewood did pay Silberberg[4] ten cents an hour less than it paid males employed as occupational therapist assistants, and that Silberberg had shown by a preponderance of the evidence that the discrepancy in pay rates was not justified on the basis that male occupational therapist assistants performed additional duties not performed by Silberberg. With regard to the first complaint the Commissioner found that Bournewood was in violation of Federal law and G. L. c. 151B, § 4, cl. 1. As to the second complaint, the Commissioner, based on facts which will be set out in detail *infra*, found that Silberberg had met her burden of showing by a preponderance of the evidence that the hospital had retaliated against her in violation of G. L. c. 151B, § 4, cl. 4.

The Commissioner ordered, on September 5, 1973, that (1) the hospital cease and desist from discriminating on the basis of sex between female and male occupational therapist assistants (see note 4 *supra*); (2) the hospital equalize the wage rates of its female and male occupational therapist assistants by raising the wage rates of females to correspond with those of males; (3) Silberberg be awarded attorney's fees in the amount of $2,000, payable by the hospital; (4) Silberberg be awarded $2,000 for "emotional distress, pain and suffering" caused by Bournewood's violation of G. L. c. 151B, § 4, cl. 4; (5) Silberberg be awarded a sum in the amount of the difference between wages paid to her and $140 a week, plus interest at a rate

---

[4] Since the Commissioner has granted Silberberg's motion to amend her first complaint to include the class of other female employees who were performing the duties of occupational therapist assistants and psychiatric aides at Bournewood, his findings of fact, opinion and order encompassed this class rather than simply Silberberg. However, on Bournewood's petition for review of the Commissioner's orders, a judge of the Superior Court ruled that "the allowance of [Silberberg's] amendment into a class action was based upon an error of law and was unwarranted by the findings of fact made by the ... commissioner and is therefore invalid. See *Spear* v. *[H.]V. Greene Co.,* 246 Mass. 259, 267 [1923]." This ruling has not been challenged before us, and we therefore, in the interest of clarity, tailor our recitation of the Commissioner's opinion and order to conform with the judge's ruling that this is not a class action.

of 6% a year, from the date she was offered the promotion to head of the occupational therapy department to the date of termination of her employment with the hospital; and (6) Silberberg be awarded back pay from the date she was hired, plus interest at a rate of 6% a year, based on a wage level equal to that of male occupational therapist assistants. See note 4 *supra.*

Bournewood timely filed a petition for review of the Commissioner's order in the Superior Court in Norfolk County.[5] After a hearing, a judgment was entered which, inter alia, set aside the Commissioner's order relating to attorney's fees (No. [3] above) and damages for "emotional distress, pain and suffering" (No. [4] above), and amended that part of the order relating to an award to Silberberg of the difference between the wages paid her and $140 a week (No. [5] above) by reducing the length of time for which this wage difference should have been paid from a period of approximately five months to a period of two weeks.

Silberberg appealed from the Superior Court judgment, see note 1 *supra,* and the case was transferred by us from the Appeals Court sua sponte. We are asked to determine whether the judge's rulings in setting aside the award of attorney's fees and the award for "emotional distress, pain and suffering," as well as his ruling that Silberberg be compensated at an increased rate of pay for two weeks as opposed to approximately five months, were in error. G. L. c. 151B, § 6. See G. L. c. 30A, § 14 (7), as appearing in

---

[5] For the purposes of G. L. c. 151B, § 6, which provides for judicial review of an order of the MCAD, the judge did not consider the fact that Bournewood did not file an appeal with the MCAD within ten days following receipt of notice of the "final decision" of the single Commissioner (see MCAD Rules for Adjudicatory Proceedings § 13.01) as barring the hospital's seeking judicial review. In light of the confusion in terminology which may have resulted from the single Commissioner's use of the title "Findings of Fact, Opinion and Order," and further considering that, on the same day the single Commissioner released his "order," the MCAD issued a press release lauding the action of the single Commissioner, we agree with the judge that Bournewood should not have been held to appealing to the MCAD before it sought judicial review.

371 Mass. 303                                                      307

Bournewood Hosp., Inc. *v.* Mass. Comm'n Against Discrimination.

St. 1973, c. 1114, § 3; *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357, 364-365 (1974); *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 447-448 (1973); *LaPierre* v. *Massachusetts Comm'n Against Discrimination*, 354 Mass. 165, 167 (1968).

We conclude that the judge was correct in setting aside that portion of the Commissioner's order awarding attorney's fees to Silberberg and in limiting that portion of the Commissioner's order which awarded her the pay she should have received as head of the occupational therapy department to the two-week period during which Silberberg actually performed in that supervisory capacity. We reverse so much of the judgment, however, as sets aside that portion of the Commissioner's order awarding Silberberg damages for emotional distress.

1. *The attorney's fee award.*    Silberberg argues that we should uphold the attorney's fee award on either or both of two grounds, viz., that the MCAD has the statutory authority to award such fees to a successful complainant in an employment discrimination case, and that, in all events, the award of such fees was proper here since she was acting as a "private attorney general."

Her first argument relies in part on the broad grant of power to the MCAD under § 5 of c. 151B, as amended through St. 1969, c. 751, §§ 10-12, after finding that an employer has violated § 4, to issue a cease and desist order and *"take such affirmative action, including, but not limited to,* hiring, reinstatement or upgrading of employees, with or without back pay ..." (emphasis supplied). She further points out that there is no explicit prohibition against an award of attorney's fees in an employment discrimination case under c. 151B, § 5, as there is under that same section with regard to the remedial powers of the MCAD in dealing with complaints alleging that an individual has engaged in a discriminatory practice in the housing or real estate spheres. See G. L. c. 151B, § 5, third par. Finally, Silberberg draws our attention to G. L. c. 151B, § 9, as amended through St. 1974, c. 478, which

provides a "person claiming to be aggrieved by a practice made unlawful under [c. 151B]" with the option of pursuing a complaint already filed with the MCAD or bringing "a civil action for damages or injunctive relief or both in the superior or probate court ... or in the housing court," and which further provides that, "[i]f the court finds for the petitioner it shall, in addition to any other relief ... award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust." To Silberberg, this provision clearly shows legislative awareness on three levels: (1) that an award of attorney's fees is necessary if c. 151B is to be effective; (2) that the MCAD has the power to award such fees (at least in some discrimination settings); and (3) that courts in civil cases rarely make such awards, thus necessitating an express authorization for attorney's fee awards in the amendment.

Silberberg's alternative contention is rooted in the belief that her situation presents an appropriate case for this court to assert its equitable power to grant or uphold an award of attorney's fees in spite of the traditional "American Rule," which teaches that attorney's fees are not ordinarily recoverable in the absence of statute, court rule, enforceable contract or stipulation providing therefor. 1 S.M. Speiser, Attorneys' Fees §§ 12:3, 13:1 (1973). She places her case within the elements of the "private attorney general" exception to the "American Rule" as set forth in *La Raza Unida* v. *Volpe,* 57 F.R.D. 94, 98 (N.D. Cal. 1972), aff'd, 488 F.2d 559 (9th Cir. 1973), cert. denied, 417 U.S. 968 (1974); that is, she asserts that the award of attorney's fees was justified here because a strong legislative policy (the eradication of discrimination based on sex) has been effectuated through her efforts, a class of people (all female occupational therapist assistants at Bournewood) has benefited, and the necessity and financial burden of private enforcement of c. 151B are such as to make the attorney's fee award essential. As to this last point she argues that, if such fees are not allowed, attorneys would be extremely hesitant to accept a discrimina-

tion case because of the frequently minimal monetary damages awarded.

Bournewood argues that nothing in c. 151B expressly gives the MCAD the power to award attorney's fees. It draws our attention to a portion of c. 151B, § 5, which, as we read it, provides that at a hearing before the MCAD, "[t]he case in support of the complaint shall be presented ... by one of its attorneys or agents" (G. L. c. 151B, § 5) and contends that, in light of this provision, the MCAD should not be allowed to award attorney's fees for services rendered before the commission because the statute contemplates they will be performed by its own representatives. The hospital further points out that when the Legislature believes that attorney's fees should be awarded in a given case it clearly says so, citing as an example G. L. c. 90, § 34M (where unpaid party has recovered judgment against personal injury protection insurer for benefits due and payable court shall assess unpaid party's reasonable attorney's fees against insurer). Finally, Bournewood cites as supportive of its averment that the MCAD has no power to award attorney's fees in the instant case other language in c. 151B, § 5, already adverted to *supra,* which plainly forbids the MCAD from including attorney's fees in a damages award to a successful complainant in a housing accommodations discrimination case. See *Massachusetts Comm'n Against Discrimination* v. *Franzaroli,* 357 Mass. 112, 115 (1970).

The most persuasive point made by either party before us, and the one we rely on in rejecting Silberberg's first argument in support of the attorney's fee award here, is that c. 151B, § 5, does not explicitly grant the MCAD the power to make counsel fee awards. We concede that we perceive some incongruity in the fact that the Legislature has expressed its intention that our courts make attorney's fee awards to successful litigants in discrimination cases "unless special circumstances would render such an award unjust," G. L. c. 151B, § 9, but has said nothing as to its intention regarding counsel fees where an individual follows up on a complaint filed with the MCAD. If we accept,

as we do here, the Legislature's silence as signifying its intention that the MCAD not be authorized to award attorney's fees in employment discrimination cases, it can be argued that ultimately we may experience an unfortunate and unhealthy kind of "forum shopping" which this court has refused to sanction in analogous circumstances. See *United Tool & Indus. Supply Co.* v. *Torrisi*, 359 Mass. 197, 199 (1971).

However, we think we would be indulging in pure speculation if we were to attempt to state the legislative purpose in providing for attorney's fees in § 9, while expressly prohibiting attorney's fees in housing and real estate discrimination cases in § 5, third par., and saying nothing about the permissibility of an award in employment discrimination cases in § 5, second par. If it is true, as Silberberg avers, that the Legislature is attuned to the fact that our courts rarely make attorney's fee awards, it must follow that, where the Legislature intends an award to be within the power of an *administrative agency* charged with enforcing the mandates of a particular statute, it will expressly state its intentions.

Silberberg's second contention is more in line with the reasons given by the Commissioner for awarding attorney's fees in this case. The Commissioner stated that "[Silberberg] has successfully shown that [Bournewood] has pursued discriminatory policies which not only violate the interests of [Silberberg], but which have affected the public interest as well." In such circumstances, at least under Federal civil rights statutes and cases, attorney's fee awards have been made. See, e.g., as to actions under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3 (b) (1970), *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968) (per curiam); *Miller* v. *Amusement Enterprises, Inc.*, 426 F.2d 534 (5th Cir. 1970); Annot., 16 A.L.R. Fed. 621 (1973). As to actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 (k) (1970), see *Long* v. *Georgia Kraft Co.*, 455 F.2d 331 (5th Cir. 1972); *Parham* v. *Southwestern Bell Tel. Co.*, 433 F.2d 421 (8th Cir. 1970); *Fogg* v. *New England Tel. &*

*Tel. Co.*, 346 F. Supp. 645 (D. N.H. 1972); *Clark* v. *American Marine Corp.*, 320 F. Supp. 709 (E.D.La. 1970); Annot., 16 A.L.R. Fed. 643 (1973). Recognizing that some Federal statutes expressly provide for discretionary awards of attorney's fees, the Commissioner noted, however, that while 42 U.S.C. §§ 1981-1982 (1970) contain no explicit authorization for awards of attorney's fees, some Federal courts have construed those statutes to permit such awards under the "private attorney general" theory. See, e.g., *Cooper* v. *Allen*, 467 F.2d 836, 841 (5th Cir. 1972); *Lee* v. *Southern Home Sites Corp.*, 444 F.2d 143 (5th Cir. 1971).

Even if we assume that the "private attorney general" rationale for awarding attorney's fees to public interest litigants is applicable here, we reject Silberberg's assertion that it should serve as the basis for upholding her award. We note that the Federal courts have been "foreclosed" from awarding attorney's fees pursuant to this theory (*Committee on Civil Rights of the Friends of the Newburyport Waterfront* v. *Romney*, 518 F.2d 71, 72 [1st Cir. 1975]) by the decision of the United States Supreme Court in *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc'y*, 421 U.S. 240 (1975), noted in The Supreme Court, 1974 Term, 89 Harv. L. Rev. 49, 170 (1975).

In *Alyeska Pipeline* the Court took stock of the growing number of Federal cases awarding attorney's fees under the "private attorney general" theory and found those cases to have been erroneously decided. 421 U.S. at 270 n.46. The Court said that legislative use of the "private attorney general" concept could not be deemed a "grant of authority to the Judiciary to jettison the traditional rule against nonstatutory allowances to the prevailing party and to award attorneys' fees whenever the courts deem the public policy furthered by a particular statute important enough to warrant the award." 421 U.S. at 263. Although we are not bound to follow the *Alyeska Pipeline* decision, we think its reasoning is compelling and its result is correct.

The traditional practice of this court has been to allow attorney's fees, as between opposing parties in litigation,

in four limited instances: (1) as costs, in accordance with specific statutory provisions or court rules, see, e.g., *Boynton* v. *Tarbell,* 272 Mass. 142 (1930); (2) as damages, in certain circumstances, see, e.g., *Hartford Accident & Indem. Co.* v. *Casassa,* 301 Mass. 246 (1938); (3) in accordance with statutory provisions under some of which the allowance may not be clearly categorized or may not be categorized at all, see, e.g., *Commissioner of Ins.* v. *Massachusetts Accident Co.,* 318 Mass. 238 (1945); or (4) pursuant to a valid contractual provision or stipulation. See generally 1 S.M. Speiser, *supra* § 12:1. With regard to an award of attorney's fees as an element of costs we have said that "a litigant must bear his own expenses, except so far as his burden is mitigated by a statute awarding him taxable costs." *Commissioner of Ins.* v. *Massachusetts Accident Co.,* 318 Mass. 238, 241 (1945), and cases cited.[6] See *United Tool & Indus. Supply Co.* v. *Torrisi,* 359 Mass. 197, 197-198 (1970), and cases cited; *Sears* v. *Nahant,* 215 Mass. 234, 235 (1913); *Brown* v. *Corey,* 134 Mass. 249, 251 (1883).

Even though it is well established that "[c]ourts of equity, in certain cases under . . . [their] general powers, allow counsel fees," *Sears* v. *Nahant, supra* at 240; *Loyal Protective Life Ins. Co.* v. *Massachusetts Indem. & Life Ins. Co.,* 362 Mass. 484, 494 (1972), the list of exceptional circumstances in which we have sanctioned a departure from our traditional approach — in the absence of statute or court rule — is not long. See, e.g., *M.F. Roach Co.* v. *Provincetown,* 355 Mass. 731, 732 (1969); the cases cited and discussed in *Commissioner of Ins.* v. *Massachusetts Accident Co., supra* at 241-242; *Wheeler* v. *Hanson,* 161 Mass. 370 (1894). Almost without exception, these departures from our traditional approach have involved an award of counsel fees in the absence of statute or court

---

[6] An example of recent legislative action in this area is St. 1976, c. 233, which provides that a court may award to parties against whom wholly insubstantial, frivolous, or bad faith claims are asserted an amount representing the reasonable counsel fees incurred in defending against such claims.

rule as an element of a successful litigant's damages. See *Goldberg* v. *Curhan,* 332 Mass. 310, 312 (1955), and cases cited. But even as to damages we have recently stated that we take "a restrictive view of the right of a successful litigant to recover counsel fees from one who has wronged him." *Harrison* v. *Textron, Inc.,* 367 Mass. 540, 554 (1975), citing *Chartrand* v. *Riley,* 354 Mass. 242 (1968), which overruled, among other cases, *Malloy* v. *Carroll,* 287 Mass. 376, 385 (1934). See *George* v. *Coolidge Bank & Trust Co.,* 360 Mass. 635, 640 (1971); *Wachusett Regional School Dist. Comm.* v. *Erickson,* 354 Mass. 768 (1968); *Klass* v. *Wirtz,* 354 Mass. 246, 247 (1968). We do not consider this to be an appropriate case for departing from our traditional approach.

2. *The award for "Emotional Distress, Pain and Suffering."* The Commissioner found the following facts relating to Silberberg's second complaint: In August, 1971, approximately ten months after the filing of the first complaint, the head of the occupational therapy department at Bournewood resigned. During the period of time Silberberg had worked at the hospital (since September, 1970), three persons had held the position of head of the occupational therapy department and, at the time of their respective appointments to the supervisory position, each of the three had been the occupational therapist assistant with the most seniority in the department.[7] When the position was vacated this time, Silberberg was the occupational therapist assistant with the most seniority.

Silberberg applied for and was offered the vacant supervisory position. However, she was not offered a raise in pay from her weekly salary as an occupational therapist assistant ($94), and was told that her pay would be raised only if she proved she was capable of handling the job. The testimony before the Commissioner indicated that Silberberg did serve as head of the occupational therapy

---

[7] There was testimony from Silberberg which further indicated that the department head immediately preceding the three who held that position while she worked for the hospital had also been promoted based on seniority.

department at her regular weekly salary for about two weeks.

Some time later a woman was hired to fill the supervisory position at a salary of $140 a week. This woman, although qualified to perform the job, had no previous experience at a psychiatric hospital, and was not required to serve any trial period before receiving the weekly salary just mentioned.

On these facts, the Commissioner found that Bournewood had retaliated against Silberberg in violation of G. L. c. 151B, § 4, cl. 4. See note 3 *supra*. In particular, he relied for his finding on Silberberg's showing that the conditions placed on her with respect to the promotion and salary increase were not placed on the person who eventually got the job, that the hospital had failed to promote Silberberg as the senior occupational therapist assistant in the customary manner, and that the person hired for the position had no previous experience — supervisory or otherwise — at a psychiatric hospital. He further was of opinion that Bournewood offered no evidence to show that Silberberg's job performance warranted the conditions placed on her before making the promotion final and increasing her salary.[8] His order awarded Silberberg $2,000 for "emotional distress, pain and suffering" caused by Bournewood's violation of c. 151B, § 4, cl. 4.

The Superior Court judge set aside the award for emotional distress as being unsupported by substantial evidence, based on error of law, and in excess of the statutory authority of the MCAD. G. L. c. 30A, § 14 (7) (b), (c), (e). The only provision he found for the award of damages — other than the adjustment in pay — in complaints arising under c. 151B, § 5, related to discrimination in housing or real estate.

---

[8] The hospital had introduced evidence that it was looking for a registered occupational therapist (which Silberberg was not) to fill the "vacant" position. As the Commissioner observed, this fact, if accepted as true, would seem to have no bearing on the hospital's treatment of Silberberg. At any rate, the person finally hired for the supervisory position was not a registered occupational therapist.

Bournewood takes the same tack. It would have us frame the issue broadly, that is, whether the MCAD has the authority under c. 151B to award compensatory or punitive damages in employment discrimination cases. See *Van Hoomissen* v. *Xerox Corp.*, 368 F. Supp. 829, 837-838 (N.D. Cal. 1973), and *Gutwein* v. *Easton Publishing Co.*, 272 Md. 563, 573-576 (1974), cases cited by the hospital in support of its position that the answer to this question is that the MCAD does not have such authority.

We see the issue we must resolve, however, to be much narrower than that. First of all, there is no suggestion in the record before us that the Commissioner awarded emotional distress damages to punish Bournewood for engaging in a practice prohibited by c. 151B, § 4. Beyond that, we think it is important to note that the Commissioner was not dealing with a mere assertion of discrimination in employment based on sex. We have before us, as the Commissioner had before him, an independent claim of retaliation by an employer against an employee who was simply doing that which the law of this Commonwealth provides is her right. Neither Bournewood nor the judge below accorded sufficient weight to this factor in considering the issue of the MCAD's authority under c. 151B to award damages for emotional distress.

It is implicit in the Commissioner's order that he recognized the egregious character of retaliation for filing a complaint with the MCAD. He also may have considered the shortcomings inherent in a simple back pay order. It is clear to us that such an order is remedial only in the sense that it tells the violator that he did wrong and not to do it again; it hardly makes the aggrieved party whole. It is from this posture that we consider the Commissioner's order as regards the award for emotional distress.

General Laws c. 151B, § 5, empowers the MCAD, after finding that an unlawful practice has been engaged in, to issue a cease and desist order "and to take such affirmative action, including, *but not limited to,* hiring, reinstatement or upgrading of employees, with or without back pay ... *as, in the judgment of the commission, will effectuate the*

*purposes of this chapter"* (emphasis supplied). This language represents a significant delegation of discretion and authority by the Legislature to the administrative agency established to enforce the Commonwealth's anti-discrimination laws. See *Zahorian* v. *Russell Fitt Real Estate Agency,* 62 N.J. 399, 416 (1973). See also *Jackson* v. *Concord Co.,* 54 N.J. 113, 126-127 (1969).[9] We think it is consistent with this delegation of a broad discretion and authority to the MCAD to fashion appropriate remedies for violations of the statute that the MCAD may, especially where retaliation for filing a complaint is shown, award damages for the natural and probable consequences of such retaliation. See *Massachusetts Comm'n Against Discrimination* v. *Franzaroli,* 357 Mass. 112, 115 (1970). Cf. *Humphrey* v. *Southwestern Portland Cement Co.,* 369 F. Supp. 832, 835 (W.D. Tex. 1973), rev'd on other grounds, 488 F.2d 691 (5th Cir. 1974). Considered in conjunction with c. 151B, § 9, which states in part that "[t]he provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof,"[10] we conclude that the legislative delegation of authority to the MCAD in § 5 provides a statutory basis for the power of the MCAD to award compensatory damages beyond a

[9] In construing identical statutory language, the Supreme Court of New Jersey has held that the administrative agency charged with enforcing its anti-discrimination laws had authority to award a complainant compensatory damages for pain and suffering as well as for economic loss. *Zahorian* v. *Russell Fitt Real Estate Agency, supra, Jackson* v. *Concord Co., supra* (both cases construing N.J. Stat. Ann. 10:5-17 [Supp. 1976-1977]).

[10] Our approach here may appear to conflict with and contradict the approach we adhered to in seeking a resolution of the attorney's fee award issue. However, the considerations which impelled us to take a restrictive view on that issue are not applicable here. As one court has pointed out, there is a basis for distinguishing between the way courts may deal with an award of counsel fees by an administrative agency (since there is no common law principle which would allow the award as costs or damages) as opposed to the way they may treat an award of damages by that same administrative agency (since damages are an integral part of the common law). *A.P. Green Servs. Div. of Bigelow-Liptak Corp.* v. *Fair Employment Practices Comm'n,* 19 Ill. App. 3d 875, 883 (1974).

back pay award in an employment discrimination case involving the additional element of retaliation.

Our inquiry into this matter does not end here, however. We must determine whether the Commissioner's order was supported by substantial evidence. "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. G. L. c. 30A, § 1 (6). *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 251 (1966)." *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357, 364-365 (1974). In reviewing an agency order, "due weight [shall be given] to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14. *Katz, supra* at 366.

That there was substantial evidence to support the Commissioner's conclusion that Bournewood retaliated against Silberberg for filing the first complaint is not seriously disputed. The judge below found as much, though he also pointed to "evidence that the hospital ... [was] acting in good faith when they agreed to give Silberberg the supervisory job on a trial basis with no increase in pay ...." On the record before us we conclude that the finding of retaliation alone permitted the inference of emotional distress as a normal adjunct of the hospital's actions.[11]

3. The judge did not exceed the scope of review entrusted to him by modifying the commission's order relating to the length of time Silberberg should have received an increased rate of pay because she performed as head of the occupational therapy department. Moreover, his conclusion was correct, since the more liberal finding of

---

[11] The standards applicable to an award of damages for emotional distress, pain, and suffering under G. L. c. 151B as a means of enforcing the Commonwealth's employment discrimination statutes are, for obvious reasons of statutory construction and policy, not as stringent as those applicable to actions of tort for intentional infliction of emotional distress. Cf. *Agis* v. *Howard Johnson Co. ante,* 140, 144-145 (1976).

the Commissioner was not supported by the evidence before him.

4. The judgment is to be modified by reinstating the award of damages for emotional distress, and, as so modified, is affirmed.

*So ordered.*