**Brenda BERGER, et al., Plaintiffs**
v.
**MASSACHUSETTS DEPARTMENT OF EDUCATION, et al.,**
**Defendants**

**No. 126695**

Superior Court
Commonwealth of Massachusetts

**June 8, 1981**

**Deborah A. Shanley,** counsel for plaintiff
**Betty E. Waxman, Asst. A.G.,** counsel for defendant
**Thomas Barnico,** counsel for defendant

## RULINGS, ORDERS, AND MEMORANDUM OF DECISION ON THE PLAINTIFF RANDOLPH SCHOOL COMMITTEE'S AND THE DEFENDANT BOARD OF EDUCATION'S MOTIONS FOR SUMMARY JUDGMENT

### Background

In this action the plaintiff members of the School Committee of the Town of Randolph appeal from a decision ("Decision") of the Bureau of Special Education Appeals ("Bureau") of the Commonwealth's Department of Education ("Department"). The appeal is brought pursuant to G.L. c. 30A, sec. 14.

Procedurally, this action was precipitated in the following manner. The parents, residents of the Town of Randolph and named as party defendants in this action, petitioned the Randolph public school system for a hearing pursuant to G.L. c. 71B (alternatively and more widely known as "Chapter 766") to determine whether or not their son, a paraplegic, ("The child") was a so-called "special needs" student. A CORE

evaluation of the child was conducted in 1978 and the evaluation team found that the child was not a child with special needs pursuant to Chapter 766. The parents appealed that finding to the Bureau.

On October 16, 1978, an evidentiary hearing was held by the Bureau. On December 4, 1978, the Bureau made a Decision determining the child to be a child with special needs as defined both by 20 U.S.C. 1401[1] and by G.L. c. 71B. The plaintiff in this action seeks judicial review of the Bureau's Decision, asserting that it is based on an error of law and is in excess of the Bureau's statutory authority. More specifically, the plaintiff claims that because the child has achieved high academic success in a regular education program he is not a child with "special needs" and is thus not entitled to the services mandated for children with special needs. The plaintiff has challenged the Board's findings:

(1) that the child is "orthopedically impaired" within the meaning of P.L. 94-142;
(2) that the child is a "handicapped child" within the meaning of Regulation 121 a.5;
(3) that the child needs "special education services" within the meaning of P.L. 94-142; and
(4) that the child is a "child with special needs" within the meaning of G.L. c. 71B and Regulation 103.0.

The plaintiff also asserts that it was error to require it to formulate a so-called Educational Plan providing the child with nursing, "credation" and physical therapy.

## RULINGS AND MEMORANDUM OF DECISION

The scope of judicial review of a decision of an administrative agency is narrow. A court must review the administrative agency's record to determine whether (1) it is free from errors of law, see, **Wheelock College v. Massachusetts Commission Against Discrimination**, 371 Mass. 130 (1976); and (2) it contains substantial evidence to support the agency's decision. **Bournewood Hospital v. Massachusetts Commission Against Discrimination**, 371 Mass. 303 (1976). The issue before the Court in this action is whether the child is a handicapped child in need of special education as defined by federal and Massachusetts legislation and regulations promulgated thereunder.[2] The plaintiff asserts that since the child has achieved high academic success in a regular classroom program, the Bureau committed error by finding him to be a handicapped child with special needs.

Several regulations must be examined to determine whether the child is, in fact, handicapped within the meaning of federal and state legislation. 45 C.F.R. sec. 121 at 5(a) establishes the standard by which the child's status as "handicapped" is evaluated:

As used in this part, the term "handicapped children" means those children evaluated in accordance with secs. 121a. 530-121a.534 as being mentally retarded, hard of hearing, deaf, speech impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, deaf-blind, multi-handicapped, or as having specific learning disabilities, who because of those impairments need special education and related services.

That section establishes a two-pronged

---

[1] 20 U.S.C. 1401, **et seq.**, the Education for All Handicapped Children Act, is the federal legislation which mandates standards by which appropriate public education is provided to handicapped children.

[2] The regulations promulgated under 20 U.S.C. 1401 **et seq.**, are embodied in 45 C.F.R. 121a. The applicable Massachusetts regulations promulgated pursuant to G.L. c. 71B are found in 603 C.M.R. 28.00.

test for evaluating whether a child is within the statutory definition of handicapped: (1) the child must suffer from one of the enumerated impairments, and (2) the child must need special education and related services because of the impairment.

In applying this standard to the child, the Bureau's hearing officer determined that, under the first prong of the test, the child qualified as "orthopedically impaired." The plaintiff challenges this finding on the basis that the regulations expressly limit the term "orthopedically impaired" to cases in which the impairment has an adverse effect on educational performance.[3] The plaintiff argues that since the child is an honor student he is not "orthopedically impaired" within the definition of that term and, thus, fails to meet the first prong of the standard used to evaluate whether a child is handicapped.

This argument must fail for several reasons. First, there was substantial evidence in the record filed by the Bureau to support the conclusion that the child's academic work had deteriorated due to his impairment. Additionally, the child's inability to participate in the regular physical education program was detrimental to his "educational performance." The child is, therefore, "handicapped" within the scope of Regs. 121a.5(a) and 121a.5(b)(6).

In concluding that there was substantial evidence to support the hearing officer's conclusion that the child is handicapped within the statutory definition of the term, it should be noted that there was conflicting evidence presented to the Bureau on the issue of the child's academic performance. There is no dispute of the fact that the child is an honor student. However, although the child's parents testified that there was no academic failure from the lack of physical therapy services, the child's classroom teacher testified that there was a deterioration in academic performance when the child became confined to a wheelchair. In her findings and conclusions, the hearing officer buttressed her decision that the child needs therapy services on the testimony of the child's classroom teacher.[4]

As discussed above, the standard of judicial review of an administrative agency's decision is whether there is substantial evidence in the record to support the decision. "Substantial evidence" is defined in c. 30A, sec. 1(6) as "such evidence as a reasonable mind might accept as adequate to support a conclusion." It is the exclusive province of the administrative agency to judge the credibility of the witnesses and weigh the evidence presented. **Labor Relations Commission v. University Hospital, Inc.,** 359 Mass. 516, 521 (1971). Applying these principles of law to this action, this Court concludes that there is substantial evidence to support the hearing officer's conclusion that Paul is "orthopedically impaired" as that term is defined in Section 121a.5(b)(6).

Additionally, this Court concludes that physical education is within the scope of the term "educational performance." Therefore, an inability to participate in physical education is a sufficient criterion to satisfy the requirement that the orthopedic impairment adversely affect education performance. 45 C.F.R.

---

[3] Section 121a.5(b)(6) defines the term "orthopedically impaired" as follows. " 'Orthopedically impaired' means a severe orthopedic impairment which adversely affects a child's educational performance ..." In effect, this definition of "orthopedically impaired," by requiring a causal relationship between the impairment and the child's educational performance, incorporates the second prong of the standard for "handicapped." 45 CFR 121a.5(a).

[4] Although the hearing officer relies on the teacher's testimony on academic performance only in her discussion of "related services," it is clear that by crediting such testimony, she is concluding that the child's physical condition affects his academic performance.

121a.5(b)(6). This conclusion is based on both the federal and the state regulations as follows. Section 121a.14(a)(1) of 45 C.F.R. defines special education to include instruction in physical education. Clearly, then, a handicapped child who needs special physical education is within the scope of the federal act. It is difficult to perceive, therefore, how an evaluation of the child's physical education limitations would not also be a part of the determination of the effect of his or her impairment on ''educational performance.''

Massachusetts law even more clearly encompasses physical education within the term ''educational performance.'' G.L. c. 71, sec. 3 mandates the teaching of physical education to all children enrolled in public schools.[5] Several regulations clarify the status of physical education as an essential element of the regular education program. In 603 CMR 9.01 physical education is defined as ''that integral part of the total education which contributes to the individual through the natural medium of physical activity-human movement.'' Sec. 603 CMR 118 defines a ''regular education program'' as ''the school program and pupil assignment for children without need of special education.'' Clearly, physical education is included as an integral part of a regular education program. Finally, 603 CMR 103 states that a ''child in need of special education'' is one who, because of certain impairments,[6] is "unable to progress effectively in a regular education program and requires special education.'' Therefore, an impairment which prevents a child from participating in a regular physical education program adversely affects the child's educational performance.

The evidence before the hearing officer was sufficient to warrant a finding that the child is unable to participate in regular physical education and that, therefore, his impairment adversely affects his educational performance. Since the child is orthopedically impaired and the impairment affects his educational performance, he is a handicapped child within the meaning of 45 CFR 121a.5(a) who is in need of special education.[7] There was no error in the hearing officer's determination that the child was entitled to special education under the provisions of 20 U.S.C. 1401 et seq., and G.L. c. 71B.

Finally, this court notes that, with respect to the related services of physical therapy and credation, the School Committee argues only that the child is not handicapped within the scope of protective legislation and is not therefore entitled to the services. The plaintiff does not dispute that the services are within the definition of ''related services.'' Since this court has determined that the child is handicapped within the provisions of federal and state law, the hearing officer's findings as to related services are supported by substantial evidence and free from error of law.

## ORDER

Accordingly, the plaintiff's motion for

---

[5] G.L. c. 71, § 3 states in pertinent part: "Physical education shall be taught as a required subject in all grades for all students in the public schools for the purpose of promoting the physical well-being of such students."

[6] A determination that a child needs special education must be based on "a finding that a child, because of temporary or more permanent adjustment difficulties or attributes arising from intellectual, sensory, emotional or physical factors, cerebral dysfunctions, perceptual factors, or other specific learning impairments, or any combination thereof, if unable to progress effectively in a regular education program ..."

[7] As discussed in f.n. 4, **infra,** the second prong of the test for the "handicapped," requiring that the child need special education by virtue of the handicap, is incorporated into the definition of "orthopedically impaired." Therefore, the analysis of the causal relationship between Paul's impairment and his educational performance serves to satisfy the second prong of the test.

summary judgment is DENIED and the defendant's motion for summary judgment is ALLOWED.

By the Court.
**Paul G. Garrity**
**Justice of the Superior Court**