ALBERT E. KENNEDY *vs.* JOHN T. KENNEDY. April 16, 1982. Albert and John Kennedy are brothers who were business partners from 1929 to 1976. In recent years, John operated a sand and gravel business and Albert ran a piggery. Each business was owned by the partnership, which existed under an oral agreement that the partners would share all profits and losses equally.

On May 10, 1976, Albert, by a letter to John, dissolved the partnership and demanded an accounting. On October 28, 1976, this proceeding was commenced in the Superior Court to obtain an order (a) dissolving the partnership and for its liquidation and (b) directing an accounting. On December 13, 1976, the case was referred to a master by an order which directed the master not to file with his report a transcript of the evidence.

Some facts were stipulated. The master filed his report on February 8, 1979. Both brothers filed objections to the report, but neither brother (in or with such objections) requested the master to prepare summaries of the evidence upon which he based particular findings. The trial judge denied John's motion to recommit the case to the master. With certain arithmetic errors corrected, the master's report was adopted. Judgment was entered for the net amount found by the master (as modified by the judge) to be due from John to Albert. Albert has appealed.

1. On this record, where the master has been ordered not to report the evidence, the master's findings are conclusive unless mutually inconsistent, contradictory, plainly wrong, or vitiated in view of the controlling law, a principle recently fully stated in *Covich v. Chambers*, 8 Mass. App. Ct. 740, 741-742 (1979), and cases cited, applicable to cases where, as here, there has been no compliance with Rule 49(7) of the Superior Court, as amended (1976). See *Miller v. Winshall*, 9 Mass. App. Ct. 312, 313-317 (1980); *Laurence Albre Associates v. Italian Catholic Cemetery Assn.*, 9 Mass. App. Ct. 922, 923 (1980); *Pacamor Bearings, Inc. v. Di-An Controls, Inc.*, 12 Mass. App. Ct. 870 (1981); *Roderick v. Carvalho*, 12 Mass. App. Ct. 873 (1981) (exhibits improperly reproduced). Under these authorities, neither party has preserved on this record any basis for questioning whether the master's findings were supported by the

evidence before him. Issues to which this principle applies include (a) questions concerning the value of the piggery assets, and (b) except as discussed below, all issues argued by Albert concerning the propriety, upon the evidence, of various findings taken into account in determining the net amount owed by John to Albert.

2. The master found that, following the termination of the partnership on May 10, 1976, John at no time has "taken any steps to wind down" the partnership's sand and gravel business. He also found that, since the termination, John has operated the sand and gravel business without any assistance from Albert and that each of them has drawn equal amounts from the sand and gravel operation. The highest paid employee of this aspect of the partnership business, the master found, receives about $26,000 a year. On this basis, he determined that reasonable compensation to John for operating the business would be $30,000 "a year before division of profits." He allowed a credit to John of $60,000 for managing the business for two years.

The Uniform Partnership Act, G. L. c. 108A, § 18(f), provides that "[n]o partner is entitled to any remuneration for acting in the partnership business, except that a *surviving* partner is entitled to reasonable compensation for his services in winding up the partnership affairs" (emphasis supplied). See also Crane & Bromberg, Partnership § 65, especially at 378 (1968). The compensation allowed to partners in *Shulkin* v. *Shulkin*, 301 Mass. 184, 188-189 (1938), appears to rest "wholly upon agreement, express or implied." We perceive no basis in the subsidiary findings for implying such an agreement in this case. See *Boyer* v. *Bowles*, 310 Mass. 134, 139 (1941). Compare *Madigan* v. *McCann*, 346 Mass. 62, 64-65 (1963). The term "surviving partner" in § 18(f) refers to a partner who survives his deceased partner or partners. *Chazan* v. *Most*, 209 Cal. App. 2d 519, 523-524 (1962). See *White* v. *White*, 254 Ark. 257, 270 (1973). In the face of the master's finding that John has taken "no step to wind down the sand and gravel activities," which was his duty upon termination, no special equitable considerations entitle John to any salary. If John had wished to have full benefit of the sand and gravel business, he could have moved more rapidly to liquidate it (or perhaps to purchase Albert's share in it). He, in the face of the statute, cannot force Albert to agree to compensation. See *Hurst* v. *Hurst*, 86 Ariz. 242, 245-246 (1959), *S.C.* after new trial, 1 Ariz. App. 227, 230, as modified, 1 Ariz. App. 603 (1965).

3. John withdrew from partnership assets substantially more than did Albert by over $200,000 in the years 1959 to 1976. The master allowed interest on these excess drawings (in the form of interest on the net amount owing to Albert) only from the entry of the complaint. He did this, in part at least, because of "the complexity of the account between the" former partners. In *Shulkin* v. *Shulkin*, 301 Mass. 184, 187, *supra*, it was said, "As a rule, interest is not chargeable among partners in the absence of some agreement," but this was recognized to be subject to an exception

"that interest may be charged if . . . [in] the circumstances of the particular case, the equities so require." In the *Shulkin* case, interest was allowed on the difference between one inactive partner's withdrawals and the amounts drawn by the active partners.

On this record, until 1976, both Albert and John were active in their respective partnership operations. The master found that the "partnership books for all activities are under the care, custody, and control of John" but actually have been kept by Albert's and John's sister. There is no suggestion in the findings that each brother could not have had full access to the partnership books. Albert could and should have known of John's disproportionate drawings which extended over many years. In 1976 also, Albert himself withdrew from the partnership $65,000, about half the proceeds of an eminent domain taking of land of a corporation owned by the partners equally. The proceeds have been lent to the partnership. Since then Albert and his son have carried on the piggery on land at least indirectly a partnership asset. From the circumstances there could be inferred Albert's acquiescence in the disproportionate withdrawals. His own conduct in 1976 was somewhat arbitrary. We think that there was basis for application of the usual rule on interest set forth in the *Shulkin* case, *supra* at 187, and that it was reasonable to disregard interest between the partners until the entry of the complaint.

4. Counsel fees to Albert were not allowed by the trial judge. Such fees are not normally recoverable in the absence of statute. *Chartrand* v. *Riley*, 354 Mass. 242, 244-245 (1968). *George* v. *Coolidge Bank & Trust Co.*, 360 Mass. 635, 640 (1971). *Bournewood Hosp., Inc.* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 303, 307-313 (1976). No pertinent exception to the general rule has been brought to our attention.

5. Credited to John in the computation of the net amount owed by John to Albert was $100,000 based on Albert's alleged conversion of the piggery assets in 1976. Albert contends that this amount should be reduced to $75,000, the amount claimed by John in his counterclaim. Even if, where an accounting is sought, the $75,000 can be regarded as an "ad damnum," the counterclaim may be amended after judgment to conform the pleadings to the proof. See *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 761 (1978); Mass.R.Civ.P. 15(b), 365 Mass. 761-762 (1974).

6. The trial judge, adopting the master's report, provided that John should have an option for one year to purchase the sand and gravel business for $180,978, one-half of the corrected value of that business as found by the master. In the later judgment, the judge abandoned the option provision and awarded Albert $14,426.67 with interest from the filing of the complaint. In addition, the judge directed that the sand and gravel business be sold at liquidation auction with the net proceeds to be divided equally between Albert and John. Albert now requests that John be required to purchase Albert's share of the business for $180,978. John in

his brief asserts his willingness to make the purchase at about that figure. If the parties are still in agreement on this issue, the judgment may be modified to permit this purchase.

7. Albert somewhat obscurely contends that there has been error in carrying out the corrections agreed upon by counsel in settling the master's report (and referred to by the master in pars. 13, 14, and 16 and in the ultimate findings of his report) and that the figure of $14,426.67, first mentioned in the judge's order adopting the master's report, should have been $24,127. It is not clear on this record whether these contentions have been taken into account by the trial judge in reaching the figure of $14,426.67. See pars. 1 and 2 of the order adopting the master's report. On remand, the trial judge should expand his order to clarify what the parties' stipulation was and what adjustments were made as a consequence of that stipulation. He may modify his order and the ensuing judgment as may be appropriate in the light of reconsidering the stipulation.

8. The case is remanded to the Superior Court for further proceedings consistent with this opinion. In any event, the credit for salary to John for the period since the master's report is to be removed from the judgment and the amount owed by John to Albert is to be adjusted so far as necessary to reflect this change and any changes necessitated by the circumstances mentioned in the preceding paragraph. Neither party is to have costs of appeal.

*So ordered.*

*Peter G. Marino* (*H. Edward Santarpio* with him) for Albert E. Kennedy.

*John O. Mirick* for John T. Kennedy.