Smith, J.
The plaintiff Broadway Brake Supply, Inc. (“Broadway”) brings this action pursuant to G.L.c. 30A, § 14 for judicial review of a trial decision and order of the Massachusetts Commission Against Discrimination (“MCAD”). Broadway requests that this court reverse MCAD’s Decision and Order and enter judgement in its favor. MCAD’s Decision and Order is AFFIRMED.
PROCEDURAL HISTORY
William Malone (“Malone”) filed a complaint with MCÁD on October 4, 1989, charging that Broadway violated G.L.c. 151B, §4(16) by refusing to hire him as an assistant auto mechanic because of his handicap. *265 The investigating commissioner found probable cause to credit Malone’s allegations, and on July 19, 1994, a hearing commissioner found that Broadway had discriminated against Malone when it failed to hire him. The hearing commissioner awarded Malone $5,760 in lost wages, with interest and $20,000 in damages for emotional pain and suffering, with interest. The Full Commission upheld the hearing commissioner’s award and further awarded Malone $10,600 in attorneys fees and $412.50 in litigation costs.
FACTS
In July of 1989, Malone completed an application to work as an auto mechanic’s assistant at Broadway. The position paid $6 an hour and the responsibilities included looking up parts and choosing the correct tools for the mechanic, driving to pick up and deliver parts, reading manuals, and keeping the work area clean. Malone indicated on his application that he was legally blind and that he would explain his disability upon request. On or about October 3, 1989, Ray Laferriere, a Broadway employee and manager of the Brockton store, called Malone for an interview. On October 4, 1989, Malone, wearing his corrective eye-wear equipment, went to Broadway for an interview. As Malone entered the premises, Charles D’Angelo, Broadway’s president, approached him and told him that he did not want people like Malone in the facility. Malone announced that he was there for an interview, and D’Angelo then questioned Malone’s ability to read and drive. Malone told D’Angelo that he had a learner’s permit for a driver’s license. D’Angelo told Malone to leave and he did not offer him the position. At the time D’Angelo told him to leave the premises, Malone needed approximately two more weeks to pass his driving test which would enable him to obtain a driver’s license.
As of October 4, 1989, Malone had completed one year of auto mechanic’s training at Somerville High School, had obtained a certificate in automotive mechanics from ITT Technical Institute, and had completed a course in basic small engine repair from NRJ Schools.
Optometrist Paulette Turco testified at the hearing that Malone’s corrective eyewear equipment enabled him to read, keep work areas clean, and drive. The eyewear equipment did not, however, enable Malone to drive at night or in inclement weather.
At the hearing, Broadway offered the following reasons for not hiring Malone: 1) hiring Malone would cause Broadway’s insurance rates to rise, 2) economic circumstances prohibited Broadway from hiring a new employee, 3) other candidates were more qualified, 4) Malone did not have a driver’s license, and 5) Broadway decided not to hire anyone to fill the position. The hearing officer found many inconsistencies in Broadway’s assertions and did not credit Broadway’s testimony regarding the reasons it refused to hire Malone.
Malone testified at the hearing that after Broadway rejected him he experienced anger, frustration, and depression. Since his confrontation with D’Angelo, Malone has been afraid to seek other employment, was forced to enter counseling for one year following the incident, and his marriage has dissolved.
DISCUSSION
1. Standard of Review
Broadway asserts that MCAD’s decision was arbitrary, excessive, and not supported by the evidence presented at the hearing. Further, Broadway asserts that it had a legitimate, nondiscriminatory reason for denying Malone a position as an auto mechanic’s assistant.
Pursuant to G.L.c. 151B, §6, a court must review the decision of the hearing commissioner in accordance with the standard of review set forth in G.L.c. 30A, §14(7). “In G.L.c. 151B, the Legislature has given the commission broad powers to receive, investigate and act on complaints of discrimination." East Chop Tennis Club v. Massachusetts Commn. Against Discrimination, 364 Mass. 444, 450 (1973). A reviewing court must “not lightly interfere with that mandate by permitting [its] judgment to be substituted for the commision’s [sic] on issues that lie within the latter’s designated field, [for] [t]o do so would render meaningless the administrative scheme enacted by the Legislature.” Id.
Accordingly, “the court must defer to the fact finding function of the commission where there is substantial evidence to support its findings and there is no other error of law." Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130, 133 (1976). In determining whether the commission’s findings are based upon substantial evidence, the court must give due weight “to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." Bournewood Hospital, Inc. v. Massachusetts Comm’n. Against Discrimination, 371 Mass. 303, 317 (1976). “Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.” Id. After careful review of the petition for appeal and the full record in this matter, this court finds that MCAD’s decision is supported by substantial evidence and that there is no error of law.
2. Shifting Burdens of Proof
General Law c. 151B, §4(16) provides that ”[i]t shall be an unlawful practice . . . [for any employer ... to . . . refuse to hire . . . because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accom *266 modation . . . would impose an undue hardship to the employer’s business.” The hearing commissioner found and this court agrees that Malone is legally blind and is a handicapped person as defined in G.L.c. 151B, §1(17) and Broadway is an employer as defined in G.L.c. 151B, §1(5).
Massachusetts courts have used two different standards to determine the burdens incumbent upon each party in handicap discrimination cases. The standards Massachusetts courts employ were first created in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Pushkin v. Regents of University of Colorado, 658 F.2d 1372 (1981). In McDonnell, a race discrimination case, the Supreme Court set forth a standard which placed upon the complainant the initial burden of demonstrating a prima facie case of discrimination. Id. at 802. Once the complainant established a prima facie case, the burden would then shift to the employer to articulate a legitimate, nondiscriminatoiy reason for the employer’s rejection of the employee. Id. If the employer could offer a legitimate reason for rejecting the employee, the complainant would then have the burden of proving that the employer’s stated reason for the rejection was merely a pretext for discrimination. Id. at 804.
The McDonnell standard was later rejected in Pushkin, a handicap discrimination case. The court in Pushkin held that complainants would not have to show pretext in handicap discrimination cases because “it would be a rare case indeed in which a hostile discriminatory purpose or subjective intent to discriminate solely on the basis of handicap could be shown.” Pushkin at 1385. The court instead created the following standard for cases involving handicap discrimination:
1) The plaintiff must establish a prima facie case by showing that he was an otherwise qualified handicapped person apart from his handicap, and was rejected under circumstances which gave rise to the inference that his rejection was based solely on his handicap;
2) Once plaintiff established his prima facie case, defendants have the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person, that is one who is able to meet all of the program’s requirements in spite of his handicap, or that his rejection from the program was for reasons other than his handicap;
3) The plaintiff then has the burden of going forward with rebuttal evidence showing that the defendants’ reasons for rejecting the plaintiff are based on misconceptions or unfounded factual conclusions, and that reasons articulated for the rejection other than the handicap encompass unjustified consideration of the handicap itself.
Id. at 1387.
MCAD employs the Pushkin standard in handicap discrimination cases where there is no dispute that the complainant’s impairment was the reason for the employer’s failure to hire.[2] While some Massachusetts decisions have embraced the Pushkin standard, others have adhered to the McDonnell standard to determine whether an employer has discriminated against a handicapped person. See Talbert Trading Co. v. Massachusetts Commission Against Discrimination, 37 Mass.App.Ct. 56, 59 (1994) (holding that once the hearing commissioner determined that the employer’s reason for terminating employee was a mere pretext, the complainant did not have to prove that employer’s reason was a pretext); Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 540 fn.4 (1995) (holding that when the employer offers a legitimate reason for his actions the complainant must prove that the reason is merely a pretext). This court finds that Malone would prevail under either the McDonnell or the Pushkin standard.
“To prove a case of handicap discrimination under the statute, the [potential] employee has the burden of persuading the fact finder that the employee (1) is a handicapped person; (2) is otherwise capable of performing the essential functions of the position; and (3) is being excluded from the position solely by reason of the handicap.” Talbert at 59. As stated previously, Malone qualifies as a handicapped person under the statute, and he offered ample evidence to prove that he was qualified for the position. He has substantial training as an auto mechanic, and Dr. Turco testified at the hearing that with his corrective eyewear equipment he would be capable of reading, driving, and keeping the work areas clean. Moreover, the hearing commissioner determined that the accommodations Malone would need (a few weeks to obtain a driver’s license and flexible driving schedules so that Malone would not have to drive at night or in inclement weather) would not be an undue hardship on Broadway.
Malone also established that Broadway refused to hire him because of his handicap. The record reveals that Broadway’s job application asked applicants if they had a disability and that D’Angelo questioned Malone about his ability to read and drive when Malone went to Broadway for his interview. Broadway also stated in a letter to MCAD that it did not hire Malone because it assumed he would be unable to perform the duties of an assistant mechanic and because it did not want to pay higher insurance rates that would result from employing a person with a disability. This court finds that Malone satisfied his burden of establishing a prima facie case of discrimination.
“Once a complainant establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for its action.” Id. at 62. “To satisfy . . . *267 [this burden], an employer’s reason must be clear and reasonably specific . . . and supported by specific facts that would justify a judgment for the employer.” Id. Although Broadway gave a number of reasons for refusing to hire Malone, none of those reasons were legitimate and nondiscriminatoiy. Broadway maintained that it refused to hire Malone because he did not have a driver’s license. At the hearing, however, D’Angelo testified that when he spoke to Malone on October 4, 1989 he believed that he possessed a valid driver’s license. Broadway also asserted that it did not hire Malone because a mechanic assistant’s duties required unimpaired vision and it wanted to avoid accidents in the work place. MCAD found that Broadway’s reasons were based on unfounded misconceptions and assumptions about Malone’s impairment. Finally, Broadway asserted that economic conditions and better qualified candidates prohibited it from hiring Malone. Broadway did not, however, present any evidence at the hearing to support these contentions.
The hearing officer’s remedy was appropriate under the circumstances. The commission is authorized under G.L.c. 151B, §5 to order remedies upon a finding of discrimination, and these remedies can include back pay and damages for emotional distress. Franklin Publishing Co, Inc. v. MCAD, 25 Mass.App.Ct. 974 (1988).[3] This court finds that the remedies ordered by both the hearing officer and the full Commission were not excessive.
CONCLUSION
In short, all the findings of MCAD are amply supported by substantial evidence. Malone established a prima facie case that he was a qualified individual who was rejected on the basis of his handicap. Because Broadway failed to show that it refused to hire Malone for reasons other than his handicap, the Decision and Order of the Full Commission holding that Broadway discriminated against Malone is AFFIRMED.
ORDER
For the above reasons, the court hereby ORDERS that MCAD’s Decision and Order be AFFIRMED and that judgment enter in favor or the defendants.

 The hearing officer determined that Malone’s handicap was the reason Broadway failed to hire Malone.

 Broadway argues that the award for emotional distress damages should be reversed because Malone did not present expert testimony regarding this issue. Massachusetts case law expressly provides that emotional distress damages may be based upon evidence other than expert testimony. See Talbert at 64; College-Town, Div. of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 169 (1987).