*Southern District*

**PERMA-HOME CORPORATION**

v.

**THEODORE NIGRO**

*Present*: Nash, P. J., Sgarzi & Kalus, JJ.

Case tried to *Casey, J.* in the District Court of Northern Norfolk. No. 45333.

Argued: ————— Decided: —————

*Kalus, J.* This matter is before us on two separate reports. One report raises a procedural issue, wherein the plaintiff (who has a finding) claims to be aggrieved by alleged error of the trial court in refusing to dismiss the defendant's claim for report and draft report, on the grounds that the defendant failed to comply with Rule 28 of the District Courts (1952), relating to the requirements of said rule as to the time of filing a draft report with the clerk's office with reference to the time of sending notice and copy thereof to opposing counsel and the trial judge. The other report raises a substantive issue wherein the defendant claims to be aggrieved by alleged error of the trial

judge in the disposition of the requests for rulings and the subsidiary findings and the finding in favor of the plaintiff.

We shall first consider the procedural question, for in the event that the plaintiff's contention that the defendant failed to comply with Rule 28 is sustained, then the defendant's claim for report and draft report are not properly on the files of the court and we do not reach the questions raised by the defendant. See *Wind Innersole & Counter Co., Inc. v. Gelick,* 317 Mass. 327.

The report relating to the procedural issue sets forth the following sequence of events. At the trial the defendant duly filed requests for rulings, and after notice of a finding for the plaintiff, on *November* 28, 1961, the defendant duly filed a claim for a report. On *December* 7, 1961, at 6:00 p.m. the defendant mailed from Boston the original draft report to the clerk's office at Dedham, and on the same day a few moments later, he mailed a copy of his draft report to the plaintiff's counsel at Boston, and a copy to the trial judge. The draft report to the clerk's office was placed in a mail box "with post office schedules for regular pick-up twenty-four hours a day." The copies mailed to counsel and to the judge were simultaneously placed in a mail box "with post office schedules for no pick-ups after 5:15 p.m." The original draft report was received and filed with the clerk's office in Dedham on *December* 8, 1961, at 9:00 a.m. The trial judge received his copy sometime

after 1:00 p.m. of the same day, with the post mark on this envelope, *"Dec.* 8, 1961, 1:00 p.m." There was no direct evidence when the plaintiff's counsel received his copy.

The plaintiff filed a motion to dismiss the defendant's draft report and at the hearing on said motion the defendant filed the following request for ruling:

> "That if the court finds that the original draft report was filed (with the clerk's office) before the plaintiff's attorney actually received the copy, the plaintiff's motion must be dismissed as a matter of law . . . ."

The court granted the defendant's request and denied the plaintiff's motion to dismiss, whereupon the plaintiff duly claimed a report and filed a draft report on the court's dismissal of his motion.

The pertinent provisions of Rule 28 are as follows:

> "A copy of such draft report shall be delivered or mailed postpaid by the party requesting the report to the trial Justice and to the adverse party before the close of the next business day after such filing," (of the draft report).

The requirements of this Rule, as in the statute and the rules governing a bill of exceptions, are judged with strictness, and unless there has been literal compliance, the right to appellate review is lost. *Famigletti v. Neviackas,* 324 Mass. 70; *Saunders v. Shoe Lace Co., Ltd.,* 293 Mass. 265; *Check-*

*away v. Cashman Bros. Co.,* 305 Mass. 470. An analysis of the decisions on this point compels the conclusion that the draft report must be filed with (received by) the clerk of court before the copy is received by opposing counsel. This may be accomplished, as the rule states, by delivering the same personally or by mailing postpaid. If the party seeks to deliver through the post office and is willing to take the chance that it (copy) will actually reach the opposing party or his counsel after the report has reached the clerk's office, there is compliance, if, in fact, the sequence set out in the rule actually occurs. As bearing on this sequence, the Court said, in the *Checkaway* case, (cited supra) ". . . When the notice was mailed it did not speak the truth for the report has not been filed, but it spoke the truth at the time of delivery . . . ."

From the facts in the instant case (they are not controverted) the trial justice rightly determined that the clerk's office actually received the draft report before the copy was received by the judge, and while there was no direct evidence as to when the plaintiff's counsel received his copy, the court could properly infer from the sequence of the respective mailings that the same was true as to the receipt of the opposing counsel's copy.

We conclude that the court's ruling was correct. The defendant's draft report is, therefore, properly on the files of the court, and

we now proceed to the defendant's claim of error on the trial of the merits.

In this action of contract the plaintiff seeks to recover for "money had and received by the defendant to the plaintiff's use." The following is a summary of the evidence. After a two week trial period, on May 1, 1960, the plaintiff employed the defendant as a "lead man" to canvas home owners to install the plaintiff's products, "materials for exteriors of houses." The "leads" would be turned over by the plaintiff to "a closer", and upon the closing of the sale, the defendant would be entitled to a commission of ten percent of the total contract price. The defendant was to work on a "drawing account against commissions," of $100.00 per week, to be advanced by the plaintiff; that all other "lead men" worked under the same arrangement; that the defendant did not "expressly agree" to repay any of the advances except from the commissions earned; that the plaintiff did not "consider" the amounts advanced to the defendant as a salary but "considered" the amounts as drawn against commission.

The evidence further indicates that each week the defendant was shown a written account kept by the plaintiff, which indicated how the advances corresponded to the commissions to that point; that at these weekly meetings the defendant was "silent" as to the accounting and he did not deny "owing" the plaintiff the difference. The defendant was credited with total sales of $21,480.00, and

he received from the plaintiff the sum of $3,458.00, leaving a deficiency of $1,310.00, which is the amount of this suit; that after the termination of the employment in February, 1961, the plaintiff and the defendant met, and the defendant stated "he appreciated getting $100.00 per week and would make it up later."

The parties duly filed requests for rulings among which and pertinent to the issues are the following:

*Plaintiff's Requests*:

1. "That if the court finds that the plaintiff paid to the defendant a draw against commission earned and not a salary then the defendant owes the plaintiff the sum of money stated in the plaintiff's declaration."
2. "That money advanced or loaned is due on demand where there is no stipulated date of payment."
3. "That a finding for the plaintiff is warranted upon all the evidence."

*Defendant's Requests*:

4. "That upon all the evidence the court must find for the defendant as a matter of law."
5. "That the plaintiff has the burden of proof by a fair preponderance of the evidence that a special agreement was entered by the parties at the time of the employment that any overdrawn commissions be paid from a source other than the commissions earned."

The court denied the defendant's requests,

"allowed" all the plaintiff's requests, and found the following facts:

"I find that the defendant had a drawing account against commissions.

That the plaintiff made weekly advancements to the defendant; that such advancements were in the nature of loan to be repaid the plaintiff to the amount in excess of commissions earned at time defendant ceased to be in the employ of the plaintiff."

The court found for the plaintiff on the declaration.

The question underlying this case rests upon a determination of the nature of the understanding of the parties as to the obligation of the defendant with respect to the repayment of any deficiencies between advances and commissions. Were these advances made with the understanding that the plaintiff was to look alone to the commissions for their repayment, or were they to be paid back by the defendant in any event? See, *Luce v. Consolidated Ubero Plantations Co.,* 195 Mass. 64. The trial court found that the defendant was obligated to repay them as a loan, and the issue before us is whether on the evidence the justice was warranted in so finding, and whether there was any error in his disposition of the requests for rulings.

It is our opinion that there was ample evidence to warrant the finding, and that there was no error in the disposition of the requests.

The evidence that the defendant did not "expressly agree" to repay . . ., and that the plaintiff did not "consider" the amounts advanced to the defendant as a salary leads us to the conclusion that there was no express agreement at the time of the employment as to repayment. Both parties used the words "advances against commissions" (this is generally called a drawing account). See *Boyer v. Bowles,* 310 Mass. 134, and in our opinion, these words do not, *per se,* imply the source of funds to repay any deficiency.

■ It is settled in the law of contracts that where there is no express agreement governing a term or a condition of an agreement, or where the intent of the parties appears doubtful, the subsequent course of dealing and conduct of the parties may be considered in determining whether there is such implication as is tantamount to an express agreement. *Boyer v. Bowles,* cited supra. In the instant case there was no meeting of the minds on this issue at the time of the hiring, and if the matter rested there, the defendant would not be required to repay at all events. But the matter did not rest there. The subsequent conduct of the parties, to wit: weekly meetings at which accountings were had, with the defendant silent and not denying owing the plaintiff the difference, clearly justifies the conclusion that whatever ambiguity existed at the time of the hiring, the defendant knew later (within a week) that the plaintiff expected repayment, as if a loan. If the de-

fendant felt this was not his "understanding" or "agreement" he could then terminate the employment without any liability to repay. This he did not do. He continued accepting advances after he knew that he was expected to repay, and in fact, according to the testimony of the plaintiff, the defendant, at a meeting after his employment terminated, promised to repay.

In view of the foregoing we conclude that the subsidiary findings and the ultimate findings were warranted, and as such they are final and must stand. G. L. c. 231, §108; *Sohon v. Odd Fellows Building Association,* 255 Mass. 465.

Defendant's request for ruling numbered 5, was properly denied because it did not state a correct proposition of law, since the obligation to repay, as was found in this case, may be implied from the conduct of the parties after the employment began. The disposition of the other requests was proper, and we see no occasion to deal with them separately.

Reports Dismissed.

Ritvo, Gordon & Rosenberg, of Boston, for the Plaintiff.

Richard A. Hubbard for the Defendant.