**In re Albert F. CURRAN, Sr. and Edward G. LeRoux, Jr., Debtors.**

**Richard C. BANE as General Partner of Tamrock Properties I Limited Partnership, William J. McMillan, Individually, Anthony J. Triglione and Arthur J. Triglione as Trustees of Cambridge Street Realty Trust, and Belle Isle Limited Partnership, Plaintiffs,**

v.

**Edward G. LeROUX, Jr., Albert F. Curran, Sr., and Summit Investment and Development Corporation Individually and as Alleged General Partners of Belle Isle Limited Partnership, Defendants.**

**Nos. 92–21116–WCH, 92–20403–WCH. Adv. Nos. 93–1093 and 93–1094.**

United States Bankruptcy Court, D. Massachusetts.

July 29, 1993.

James M. Liston, Howard M. Brown, Kaye, Fialkow, Richmond & Rothstein, Boston, MA, for plaintiffs.

Stephen F. Gordon, Stanley Wheatley, Gordon & Wise, Boston, MA, for defendant Summit Investment and Development Corp.

Andrew C. Griesinger, Paul D. Moore, Choate, Hall & Stewart, Boston, MA, for defendants Edward LeRoux and Albert Curran.

## MEMORANDUM DECISION ON DEFENDANTS' MOTIONS TO DISMISS

WILLIAM C. HILLMAN, Bankruptcy Judge.

### PROCEDURAL HISTORY

On February 10, 1993, four limited partners of Belle Isle Limited Partnership ("BI"), Richard Bane, William McMillan, Anthony Triglione, and Arthur Triglione (collectively, the "Plaintiffs" or "ILPs") commenced these proceedings against the three general partners of BI, Edward LeRoux, Jr. ("LeRoux"), Albert Curran ("Curran"), and Summit Investment and Development Corporation ("Summit") (collectively, the "General Partners"). Plaintiffs brought this adversary proceeding on their own behalf, as ILPs in BI, and on behalf of BI as a derivative action.

Defendants Curran and LeRoux are both debtors in Chapter 11 cases currently pending before this Court. Defendant Summit is not a debtor. The two adversary proceedings were consolidated by order of this court dated February 24, 1993.

On April 28, 1993, Defendant Summit filed a Motion to Dismiss the complaint against it pursuant to Fed.R.Civ.P. 12(b)(1) and (6), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7012(b) ("Summit's Motion"). Curran and LeRoux filed a similar motion. Plaintiffs filed an opposition to both motions and later filed an amended complaint. The court will address the motions separately.

### FACTS ALLEGED IN THE COMPLAINT

In ruling upon a motion to dismiss, the Court must accept as true all well pleaded factual allegations of the complaint. The plaintiff must be given the benefit of all reasonable inferences, and the motion must be denied unless it appears that the plaintiff can prove no set of facts in support of its claims that would entitle it to the relief sought. *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *United States Trust Co. v. Raritan River Steel Co. (In re American Spring Bed Mfg. Co.)*, 153 B.R. 365, 370 (Bankr.D.Mass. 1993).

On June 26, 1986, BI purchased the stock of Ogden Suffolk Downs, Inc. ("Ogden") whose principal asset was the property comprising the Suffolk Downs racetrack in East Boston. Ogden was then dissolved and Suffolk Downs was distributed to BI. The total purchase price of Suffolk Downs was $21 million. To finance the purchase, BI assumed a $6 million note executed by Ogden (the "Ogden Note") and took a $13 million loan (the "Mortgage Loan") from US Trust Bank (the "Bank"). BI thus incurred a total of $19 million in debt to acquire Suffolk Downs.

From June 26, 1986 through December 31, 1989, BI leased substantially all of its racetrack property to New Suffolk Downs Corporation ("NSD"), an affiliate of LeRoux and Curran. NSD was obligated to pay BI a total of $8,063,249.00 during the lease period. However, BI collected only $4,796,853.00.

On June 9, 1986, BI distributed a Confidential Offering Memorandum soliciting the sale of limited partnership units in BI (the "Offering"). On December 1, 1986, BI distributed a Supplement to the Offering (the "Supplement"). The Supplement rep-

resented that: (1) the sale of the limited partnership units to investors would be consummated and investors admitted as limited partners when 18 of the 60 partnership units had been sold; (2) the proceeds of the first installment payments made by the purchasers of the first 18 units ($4.5 million) would be paid to the Bank to reduce the balance of the Mortgage Loan and the total acquisition debt; (3) of the $9 million in proceeds to be derived from future installment payments on unit sales, $8.5 million would be used to reduce the total acquisition debt to $10.5 million; and (4) the General Partners would actively seek admission of additional limited partners to purchase the remaining units.

In reliance on the representations made in the Supplement, the Plaintiffs consummated their purchase of the units and refrained from exercising a right of rescission and withdrawal contained in the Supplement.

Plaintiffs allege that the Offering and the Supplement contained false representations of material facts and that the Defendants conducted BI's affairs in a way that caused Plaintiffs substantial financial injury.

The complaint consists of thirteen counts. The first ten are state law claims which allege breach of fiduciary duty, constructive trust, breach of contract, unjust enrichment, negligence, fraud, violation of M.G.L. c. 110A and c. 93A, promissory estoppel, and waste of partnership assets. The remaining three counts are non-dischargeability claims under 11 U.S.C. § 523 which relate only to Curran and LeRoux.

In sum, the complaint alleges that the General Partners are liable to Plaintiffs for failure to use the proceeds from the unit sales to reduce BI's acquisition debt; failure to solicit additional unit sales; failure to collect the full amount of rent owed from NSD to the BI; for paying "exorbitant" salaries to NSD and BI; and for failure to maintain accurate and complete payroll records regarding these salaries.

## I. SUMMIT'S MOTION TO DISMISS

Summit alleges four grounds for dismissal of the complaint against it: (1) the Bankruptcy court lacks subject matter jurisdiction over Plaintiffs' claims against it; (2) the Court should exercise its discretion to abstain from hearing Plaintiffs' state law claims against it; (3) Plaintiffs have failed to comply with the prerequisites of a derivative suit; and (4) Plaintiffs' claims are barred by applicable statutes of limitation.

### A. Subject Matter Jurisdiction

Summit alleges that Plaintiffs' complaint against it should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

The basic grant of jurisdiction is 28 U.S.C. § 1334. Subsections (a) and (b) read as follows:

(a) "Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising "under" title 11, or arising "in" or "related to" a case under title 11."

The subject matter jurisdiction is delegable by the district court to the bankruptcy court by virtue of 28 U.S.C. § 157(a).

Summit contends that the Bankruptcy court lacks jurisdiction over Plaintiffs' claims against it because the claims do not constitute proceedings "arising under", "arising in", or proceedings "related to" a case under title 11.

It is undisputed that Plaintiffs' claims against Summit are not civil proceedings "arising under" or "arising in" a case under title 11. The material issue is whether this court has subject matter jurisdiction over the controversy between Plaintiffs and Summit by virtue of "related to" jurisdiction.

The Code does not define "related matters", but the general rule for determining

whether a third party civil proceeding is "related to" a bankruptcy is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). Furthermore, "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts on the handling and administration of the bankrupt estate." *Id.*

Plaintiffs contend that the Bankruptcy court has "related to" jurisdiction over the action between Plaintiffs and Summit because Curran, LeRoux, and Summit are jointly and primarily liable on any debt that might arise from this adversary proceeding. Plaintiffs argue that the proceeding does have an impact upon the Curran and LeRoux bankruptcy cases because if the complaint against Summit is dismissed, the estates will bear the entire burden of any judgment Plaintiffs may obtain. Summit counters that the "remote possibility" of joint liability and claims for contribution among the Defendants should not be enough to make Plaintiffs' third party claims against Summit "related to" the Curran and LeRoux bankruptcies.

Based on the broad standard for "related to" jurisdiction articulated in *Pacor*, this court finds that it does possess subject matter jurisdiction over the proceeding between Plaintiffs' and Summit. The possibility of joint liability among the Defendants is more than remote because the Defendants are named in both their individual and general partner capacities. A judgment against Summit as a general partner of BI will affect the amount of claims sought against LeRoux and Curran's estates because of the potential for imputed liability among the General Partners of BI.

Pursuant to 28 U.S.C. § 157(c)(1) the court also finds as a matter of law that the within matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**B. Abstention**

Summit next argues that even if the court does find that it has subject matter jurisdiction, it should exercise its discretion to abstain from hearing the matter under 28 U.S.C. § 1334(c)(1):

"Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

28 U.S.C. § 1334(c)(1).

Some of the factors which courts consider in determining whether to abstain under § 1334(c)(1) include:

(1) the effect or lack of effect on the efficient administration of the estate if the Court abstains;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable state law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing the state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) any unusual or other significant factors.

*In re Craft Architectural Metals Corp.,* 115 B.R. 423, 432 (E.D.N.Y.1989).

Summit argues that discretionary abstention is appropriate because Plaintiffs' claims comprise a non-core proceeding; Summit does not consent to entry of final orders or judgment by the Bankruptcy court; Plaintiffs' claims are based completely on state law with no diversity or independent basis for federal jurisdiction; and Summit does not waive its right to a jury trial on these claims.

■ Notwithstanding Summit's arguments, "[I]t must be considered that there is only a 'narrow sphere' of cases in which discretionary abstention should be granted under § 1334(c)(1)." *In re West Coast Video Enterprises, Inc.,* 145 B.R. 484, 488 (Bankr.E.D.Pa.1992).

The Court does not consider the present proceeding to be a case within this "narrow sphere". In reaching this conclusion, the Court gives major consideration to the fact that there is no state court action currently pending between Plaintiffs and Summit. Consequently, if this Court abstains, Plaintiffs would be required to commence and litigate a separate state court action against Summit while this Court would be conducting a trial on identical issues involving the LeRoux and Curran. Judicial economy would be best served if jurisdiction over Summit is retained and the case is permitted to proceed to judgment in the Bankruptcy court.

### C. Failure to Comply with the Requirements for A Derivative Action

■ Massachusetts law permits derivative actions to be asserted by limited partners. Mass.Gen.L. ch. 109, § 56. Fed. R.Civ.P. 23.1 states in part:

"... The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain

the action or for not making the effort ..."

Plaintiffs' complaint simply states: "Plaintiffs have not made demand on the General Partners to bring this action on behalf of Belle Isle, since the General Partners themselves are named as Defendants, and demand would therefore be futile." (Complaint ¶ 6) Summit argues that such a conclusory statement is insufficient for Plaintiffs to overcome the "demand requirement" of Rule 23.1.

The court finds that the other factual allegations in the amended complaint are sufficient to demonstrate that making demand on BI to bring the instant action would have been futile.

### D. Statute of Limitations

Plaintiffs' amended complaint alleges dates within the limitations period as to each count. As noted above, for purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true. *U.S. Trust Co. v. Raritan River Steel Co., (In re American Spring Bed Co.), supra.* Summit's argument must fail.

### E. The Hearing

This adversary proceeding was commenced against the three Defendants individually and as general partners of BI. At the hearing on Summit's motion, Summit raised the additional issue of whether it would be wise for Summit to have this case dismissed against it when damages could be still be assessed against BI. Summit therefore requested that it be dismissed from this action only if the court also dismisses the case against Curran and LeRoux in their capacity as general partners of BI.

For reasons stated separately below, this court will not dismiss the complaint against Curran and LeRoux as General Partners of BI. In light of this fact, Summit should remain a party Defendant in this action to protect its interest in the Belle Isle Limited Partnership.

CONCLUSION

Summit's Motion is denied. However, as indicated below, Summit is the beneficiary of certain arguments made by Curran and Leroux with regard to the claims under ch. 93A. A separate order will enter.

## II. CURRAN AND LEROUX'S MOTION TO DISMISS

Curran and Leroux (hereinafter the "Defendants") allege five grounds for dismissal in their motion ("Defendant's Motion"): (1) Plaintiffs have not complied with the requirements for a limited partner derivative action; (2) Plaintiffs have failed to allege fraud with particularity; (3) Plaintiffs' claims are barred by the applicable statutes of limitation; (4) Plaintiffs have failed to state claims upon which relief can be granted; and (5) Plaintiffs have not pled sufficient wrongdoing for the non-dischargability claims under 11 U.S.C. § 523.

### A. Failure to Comply with the Requirements for A Derivative Action

Defendants argue that Plaintiffs cannot maintain a limited partner derivative action because Plaintiffs were not excused from asking the partnership to bring the suit. For the reasons previously stated this argument must fail.

■ They also argue that Plaintiffs have no standing to assert individual claims in this adversary proceeding as Plaintiffs' claims are essentially for breach of fiduciary duty and mismanagement which are derivative in nature and so belong to BI, not the partners as individuals.

Plaintiffs argue that the majority of their claims are personal because under Massachusetts law partners owe one another a fiduciary duty, and a partner is liable to the non-breaching partner directly. *Horizon House–Microwave v. Bazzy*, 21 Mass.App. 190, 196, 486 N.E.2d 70 (1985). The court agrees and finds Defendants' Motion on this ground to be incorrect.

### B. Failure to Allege Fraud with Particularity

■ Defendants argue that Plaintiffs did not plead their allegations of fraud with sufficient particularity under Fed.R.Civ.P. 9(b) made applicable to these proceedings by Fed.R.Bankr.P. 7009 which requires that: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity ..." Fed. R.Civ.P. 9(b). It is argued that Plaintiffs' allegations are conclusory in nature with no underlying facts regarding the time, place or content of the alleged fraud or the alleged wrongdoers. Defendants contend that this "lack of particularity" indicates that Plaintiffs filed the instant adversary proceeding to conduct discovery to determine whether their allegations could be supported, which conduct has been disapproved by the First Circuit. *E.g., Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991), *Kauffman Mutual Funds Action*, 479 F.2d 257, 263 (1st Cir. 1973).

Plaintiffs' amended complaint contains more specifics in regard to the time and manner of Defendants' alleged fraud, and the court is satisfied that the amended complaint provides sufficient "particularity" under Rule 9(b).

### C. Failure to State A Claim Under Constructive Trust

■ Defendants next argue that Count II of the Plaintiffs' complaint, labeled "Constructive Trust", should be dismissed because a constructive trust is a remedial device, not a cause of action. *Shick v. Farmers Home Admin.*, 583 F.Supp. 534, 536 n. 2 (D.Mass.1984), (quoting *Vigran v. Poelker*, 433 F.Supp. 168, 171 (E.D.Mo. 1977)). The court finds this argument to be trivial. The problem here is not substantive, but merely one of semantics. Whether a constructive trust is a claim to be brought or merely a remedy to be obtained for another claim such as breach of fiduciary duty is irrelevant. Defendant's Motion to dismiss this count of the complaint is denied.

### D. Statute of Limitations

For the reasons discussed above with regard to the Summit Motion, the court finds that the applicable statutes of limitation do not bar Plaintiffs' action.

### E. Failure to State A Claim Under Ch. 93A

■ Plaintiffs allege Defendants' conduct constitutes unfair or deceptive acts or practices as defined in Mass.Gen.L. ch. 93A, §§ 2 and 11. In response, Defendants argue that ch. 93A is not intended to apply to an action for breach of a fiduciary duty between partners in a partnership but only to dealings between discrete, independent business entities, citing *Newton v. Moffie*, 13 Mass.App. 462, 467, 434 N.E.2d 656 (1982).

■ The Court agrees with Defendants. In partnership disputes, the aggrieved party's remedy lies in a claim for breach of fiduciary duty. *See Zimmerman v. Bogoff*, 524 N.E.2d 849, 402 Mass. 650, 663 (1988). The court finds that Plaintiffs cannot maintain their claim under § 93A against the Defendants as to events which occurred while they were partners. However, the facts alleged could sustain the count as to earlier events. Defendant's Motion will be granted to that extent. As similar claims are made against Summit, this portion of the order will relate to that defendant as well.

### F. Failure to State A Claim Under 11 U.S.C. § 523(a)

■ Defendants argue that Plaintiffs do not have standing to assert § 523 claims because they have not established that they are actual creditors of Debtors. Defendants argue that Plaintiffs' first ten counts are barred by statutes of limitations and because they are not pled with sufficient particularity. As discussed above, Defendants' arguments relative to particularity and statutes of limitation fail, and the court finds that Plaintiffs have standing as actual creditors of Debtors.

## III. NONDISCHARGEABILITY CLAIMS

### A. *§ 523(a)(2)(A)*

■ As creditors, Plaintiffs have three possible claims under 11 U.S.C. § 523. The first is under § 523(a)(2)(A):

"A discharge ... does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, false representations, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

Defendants assert that this claim cannot be maintained because Plaintiffs did not allege that Debtors' alleged fraud involved moral turpitude or intentional wrong. *In re Snyder*, 101 B.R. 822, 835 (Bankr. D.Mass.1989); *In re Jackson*, 89 B.R. 308, 312 (Bankr.D.Mass.1988). They allege that the fact that Plaintiffs did not plead that partnership funds were intentionally misappropriated or used for an illegitimate purpose is fatal.

The complaint states that Defendants represented that proceeds from the sale of the first 20 limited partnership units would be used to reduce BI's acquisition debt and that the General Partners would actively try to sell an additional 17 units. The complaint states that at the time Defendants made these representations, they did not intend to act in accordance with them.

■ The court finds that Plaintiffs have stated a claim under § 523(a)(2)(A) upon which relief can be granted. A false representation concerning a person's present intention to perform some act in the future constitutes actual fraud under 523(a)(2)(A). *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D.Ind.1988).

### B. *§ 523(a)(4)*

Plaintiffs' second nondischargeability claim arises under § 523(a)(4):

"A discharge ... does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity."

Defendants assert that Plaintiffs do not have a claim under § 523(a)(4) because substantial precedent exists that a partner of a partnership is not a fiduciary for purposes of 523(a)(4). *In re Kelley*, 84 B.R. 225, 228–29 (Bankr.M.D.Fla.1988), *In re Napoli*, 82 B.R. 378, 382 (E.D.Pa.1988).

Federal bankruptcy law controls who is a fiduciary for purposes of § 523(a)(4). *Hoff v. Carroll (In re Carroll)*, 140 B.R. 313, 315 (Bankr.D.Mass. 1992). To be a fiduciary for dischargeability purposes, the debtor must be a trustee under an express or technical trust. *Id.; Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934). Most courts today recognize that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law. *See Moreno v. Ashworth*, 892 F.2d 417, 421 (5th Cir.1990). State law is relevant in determining whether or not a trust relationship exists. *Carroll* at 315.

The issue for the court to decide is whether Massachusetts state law creates an express trust between the partners of a partnership.

A number of courts have addressed the issue of whether a partner owes other partners the type of fiduciary duty contemplated by § 523(a)(4) to his co-partners. The courts are split on the issue. The majority of courts that have found a fiduciary duty to exist among partners have based their conclusion on § 21(1) of the Uniform Partnership Act ("UPA") which states:

> (1) "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property."

Adopted in Massachusetts as Mass.Gen.L. ch. 108A § 21(1).

The courts in *Celone v. Dino (In re Dino)*, 82 B.R. 184, 186 (Bankr.D.R.I.1988); *Landvest Assoc. v. Owens (In re Owens)*, 54 B.R. 162, 165 (Bankr.D.S.C.1984); and *Holmes v. Kraus (In re Kraus)*, 37 B.R. 126, 130 (Bankr.E.D.Mich.1984) among others, have held that the words "holds as trustee" establish an express trust among partners. This court disagrees. This provision does not impose a trust until a partner "derives" partnership profits without the consent of the other partners. That type of trust *ex maleficio* not included within the purview of § 523(a)(4). *Davis v. Aetna Acceptance Co.* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). Reliance upon UPA § 21(1) to prove the existence of a trust relationship between partners is a misapplication of the statute. If it exists, it must be found elsewhere.

Under Massachusetts law, in order to create an express trust there must be an intent to create a trust, a specific trust res, and identifiable beneficiaries. *Ventura v. Ventura*, 555 N.E.2d 872, 407 Mass. 724, 727–28 (1990).

Massachusetts courts have universally recognized the fiduciary relationship of partners and impose on them obligations of good faith and integrity in their dealings with one another in partnership affairs. *Wilkes v. Springside Nursing Home, Inc.*, 370 Mass. 842, 353 N.E.2d 657 (1976); *Cardullo v. Landau*, 329 Mass. 5, 105 N.E.2d 843 (1952); *Nelson v. Bailey*, 303 Mass. 522, 22 N.E.2d 116 (1939). It is a fundamental characteristic of partnership that the partners' relationship is one of trust and confidence. One partner cannot, directly or indirectly, use partnership assets for his own benefit; he or she cannot, in conducting the business of the partnership, take any profit clandestinely, the partner cannot carry on the business of the partnership for private advantage; nor can he or she avail himself or herself of knowledge or information which may be regarded as property of the partnership. *Latta v. Kilbourn*, 150 U.S. 524, 541, 14 S.Ct. 201, 207–08, 37 L.Ed. 1169 (1893).

The Supreme Court as well as Massachusetts common law clearly evince an intent that partners act as trustees for the benefit of each other with respect to the trust res which consists of the partnership assets. A partnership is an association. Mass.Gen.L. ch. 108A § 6(1). It is created by a voluntary contract. *Boyer v. Bowles,* 310 Mass. 134, 37 N.E.2d 489 (1941). The Court finds that Massachusetts partnerships satisfy the necessary elements of an express trust and and that partners act in a fiduciary capacity toward each other for purposes of § 523(a)(4).

To state a claim upon which relief can be granted under § 523(a)(4), Plaintiffs must also show that the Defendant partners were already fiduciaries when their debt to Plaintiffs arose. *Davis v. Aetna Assurance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). In the present case, the alleged fraudulent acts occurred both prior to and during the course of the partnership relationship. Therefore, the court will dismiss the § 523(a)(4) count against Curran and LeRoux for all acts which allegedly occurred prior to the time Plaintiffs became limited partners in BI.

### C. *§ 523(a)(6)*

Last, Plaintiffs include a claim under § 523(a)(6):

> "A discharge ... does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity."

Defendants contend that Plaintiffs cannot maintain a claim under § 523(a)(6) because Plaintiffs did not allege that BI funds were intentionally or maliciously converted, misappropriated or used for any purpose other than legitimate business expenses.

The court finds that the complaint does plead that Defendants committed willful and malicious acts which injured plaintiffs and BI, such as intentionally failing to use proceeds to reduce the loan balances (Amended Complaint p. 8 ¶ 39), consciously disregarding the duty to sell additional units (p. 8 ¶ 38), payment of excessive salaries and intentional failure to collect rent (p. 9 ¶ 10 and p. 11 ¶ 55).

### CONCLUSION

With the exception of the indicated portions of Plaintiffs' ch. 93A and § 523(a)(4) claims, Curran and Leroux's Motion to Dismiss this adversary proceeding is denied. A separate order will enter.

A pre-trial conference will be scheduled to establish a discovery and trial schedule.