Velis, J.

INTRODUCTION

The plaintiff, Michele McDonald, has filed this action claiming a breach of contract and unfair and deceptive acts or practices under G.L.c. 93A by the defendant, Peter Fox, in the formation and operation of a retail shoe store. In addition, McDonald alleges *236 that Fox engaged in intentional misrepresentation and fraudulently induced McDonald to invest in the business endeavor. On June 29 and July 1, 1999 this matter went before this court for a bench trial. After hearing the testimony of witnesses, reviewing the exhibits and stipulations of facts, and considering the arguments of counsel, this court makes the following findings of fact and rulings of law, and orders judgment to be entered in favor of the defendant on all counts of the plaintiff s complaint.

FINDINGS OF FACT

The plaintiff, Michele McDonald, is a resident of Lancaster, Massachusetts. The defendant, Peter Fox is a resident of Vancouver, British Columbia, Canada, and is the head of a Canadian corporation known as Peter Fox Shoes, Ltd., a retail shoe establishment with places of business in Toronto, New York, and California. The shoes are designed by the defendant, with the assistance of his wife, and are manufactured in Italy. There are two retail stores in New York owned and operated by P.F. Shoes of New York, Ltd. and one in California owned and operated by Peter Fox Shoes California, Ltd.[2] The Toronto store is owned by Peter Fox Shoes, Ltd., and one Betty Lamanna. Lamanna operates the Toronto store and owns a 25% interest.
McDonald is a former employee of P.F. Shoes of New York, Ltd., where she managed one of the stores. McDonald’s duties included the maintenance of daily business records, the hiring and firing of staff, and receiving deposits, inventory and sales. Sometime in the late spring of 1994, McDonald had a series of conversations with the defendant regarding the possibility of opening a Boston shoe store. The culmination of the discussions led to the decision that Peter Fox Shoes, Ltd. and McDonald would open a Peter Fox shoe store in Boston. McDonald and Fox discussed the viability of such an endeavor, including the possibility that the store might eventually lose money and need to be closed, and the defendant submitted projections for a break-even basis on October 8, 1994.
During those discussions, the defendant expressed his concern that he did not have enough cash to open another store. McDonald suggested that she and her sister would be able to provide some capital, and the parties agreed that the defendant would supply certain inventory in lieu of some cash.[3] The ownership interest and the sharing of profits would be relative to the amount of capital and/or inventory invested by McDonald and P.F. Shoes ofNew York, Ltd., a company owned by Peter Fox Shoes, Ltd. This agreement was similar to the one with Lamanna regarding the Toronto store. At that point, Fox sent the Lamanna agreement to McDonald for her examination and as a reference point for the parties’ arrangement.
Fox sent a proposed contract to the McDonalds and the parties communicated via fax regarding this contract. Jane Innamorati, an attorney for McDonald, modified the proposed contract, however, the modifications were never received by the defendant and the parties never signed a formal agreement. No Articles of Partnership were ever executed, and as a result, the parties never discussed how to manage losses.
The McDonalds found the location for the Boston store. They negotiated the terms of the lease with the landlord and transmitted that information by fax to Fox. Additionally, the McDonalds expended certain cash amounts for leasehold improvements. In order to assist in financing, the McDonalds acquired a loan from Shawmut Bank.[4] The plaintiff and her sister took it upon themselves to accomplish just about all the prerequisites that were needed for the opening of the store and the sale of the shoes. The McDonalds stocked the store, set up displays, decorated the location, and established the procedures that would be used in the day to day operations of the store. I credit the testimony of the defendant that the plaintiff acted as more than a manager of the store.
On November 25, 1994, the parties opened the Boston store. McDonald received an hourly wage as well as commissions for the sale of shoes. The inventory for the Boston store was provided by Peter Fox Shoes, Ltd., the home office, and it was common practice for inventory to be transferred among the various Peter Fox shoe stores. The rent for the store, employee salaries, and commissions were paid by the defendant from checks written in Toronto. The Boston store was often required to pay Peter Fox Shoes, Ltd. for the inventory it received. The defendant sent the plaintiff copies of her W-2 forms in connection with her employment with the Boston store. I credit the testimony of the defendant that he sent the financial statements of the Boston store to the plaintiff on a regular basis, and that store managers or store employees do not receive such statements.
On May 10, 1995, Peter Fox Shoes, Ltd. sent a fax to McDonald and her sister expressing the final investment amounts for determining the distribution of profits and ownership in the Boston store. The fax stated that P.F. Shoes of New York, Ltd. invested $109,301.98, and that McDonald invested $45,000. According to these figures, the McDonalds’ ownership and profit share in the Boston store would be approximately 29%.[5] McDonald found out in the fax that she would pay a 15% management fee on gross sales. The management fees were paid to Peter Fox Shoes, Ltd., the home office, to cover costs surrounding the manufacture and distribution of the shoes as well as advertising. There was no prior discussion regarding these fees, however, McDonald did not object to the fax and continued to proceed with the business arrangements.
The Boston store’s business was mediocre at best and, ultimately, the store had to be closed for lack of revenue. Sometime in January 1996, after thirteen months of operation, the store closed for nonpayment of rent due to inadequate revenues, and sent a portion *237 of its inventory to other Peter Fox store locations. The plaintiff and the defendant discussed the closing of the store and the possibility of selling the remaining inventory through other means. While the termination of the tenancy was negotiated for the most part between the defendant and the landlord, the decision to close the store was ultimately reached by agreement of both parties.
After the store was closed, independent chartered accountants from the firm of Klynveld, Peat, Marwick and Goerdeler, valued the remaining assets at $44,600.00. The plaintiff retained a portion of these assets, including inventory in the form of shoes, with a net value to the plaintiff of $24,401.00.[6] The plaintiff has also been repaid $6,841.97.[7]

RULINGS OF LAW

A. Breach of Contract and Violation of G.L.c. 93A

1. Breach of Contract

A partnership is created by per sons joining together their money, goods, labor, or skill for the purposes of carrying on a trade, business, or profession where there is community of interest in profits or losses. Nickerson v. Ribicoff, 206 F.Sup. 232, 236-37 (D.Mass. 1962); Fenton v. Bryan, 33 Mass.App.Ct. 688, 690-91 (1992). Under Massachusetts law, a partnership does not need to be created by a written agreement. Kansallis Finance, Ltd. v. Fern, 40 F.3d. 476, 479 (1st Cir. 1994). Instead, a partnership is created when the parties intend to do those things which constitute a partnership. In re Medalian Realty Trust, 103 B.R. 8, 12 (Bkrtcy.D.Mass. 1989); Kansallis Finance, Ltd, 40 F.3d. at 479 (“Intent to carry on business as partners may be inferred from the partners’ words and acts”).
Here, the parties intended to share the profits of a shoe store in Boston. According to their agreement, the plaintiff was to provide a certain amount of capital and the defendant was to provide both capital and inventory. Both the plaintiff and the defendant reviewed business plans and had input as to the location and general operation of the store. There was joint control over the endeavor, as both parties had some degree of control over the common venture; the defendant paid the rent and salaries, while the plaintiff managed the day-to-day operations of the store. This is not a situation where one party was investing in the outcome of another’s enterprise or was employing the other to simply manage a business.[8] Both parties brought something to the table with the hopes that a collective effort would bring about profit for both of them. Therefore, it is concluded that the defendant, through P.F. Shoes of New York, Ltd., and the plaintiff were general partners in this endeavor.[9]
The plaintiff complains that the defendant breached certain contractual arrangements. However, there are no written contracts executed by the parties. The only agreements between the plaintiff and the defendant are those which evidence the above-mentioned partnership. Under the terms of this partnership, the plaintiff and the defendant were to split profits according to the amount of assets contributed. Because there was no agreement to the contrary, the plaintiff and defendant were to share the losses and, as result of the losses, the remaining assets along the same lines. See Walsh v. Chestnut Hill Bank and Trust Co., 414 Mass. 283, 293 (1993); In re Medalian Realty Trust, 103 B.R. at 12 (where the court held that an agreement to split losses is implied from an agreement to split profits). Therefore, the plaintiff was entitled to 29% of the remaining $44,600.00 in assets. The plaintiff was in fact repaid $6,841.97 and retained assets, including the shoes, with a net value to the plaintiff of $24,401.00. Therefore, the plaintiff recovered a total of $31,242.97 in cash and assets, an amount greater than 70% of the remaining assets at the time the store closed. This evidence does not support the argument that the defendant breached its partnership agreement with the plaintiff.[10]
The plaintiff also alleges that the defendant breached its contractual obligations by charging a management fee and requiring the plaintiff to pay for certain inventory. This argument fails because the plaintiff was aware, through the May 10, 1995 fax and the operating procedures of the other stores, that these practices would be part of the partnership arrangement. Moreover, the defendant did not bill the plaintiff in his partnership capacity, but instead charged the plaintiff fees for goods and services as a separate entity that made-shoes. Peter Fox Shoes, Ltd., through P.F. Shoes of New York, Ltd., and the plaintiff formed a partnership, a new entity, which conducted business with Peter Fox Shoes, Ltd.
Finally, it should be noted that the plaintiffs investment in the business endeavor cannot be viewed as a loan and that the defendant breached a contractual agreement to repay such a loan. There is no evidence which supports the existence of a loan, and as discussed above, the plaintiffs investment was part of the agreement to form a partnership.

2. Chapter 93A

Chapter 93A claims for unfair or deceptive acts do not apply to partnership disputes. Rather the court should determine whether there was a breach of fiduciary duty between partners. In re Curran, 157 B.R. 500, 508 (Bkrtcy.D.Mass. 1993). Here, the plaintiff has not shown that the defendant breached any duty to her such as concealing profits, misusing assets, or violating the above-mentioned partnership arrangements. Nor has the plaintiff shown that the defendant did not fully disclose the terms of the partnership. To the contrary, the defendant engaged in honest and open discussions with the plaintiff regarding the nature of the business arrangement. The defendant even attempted to reduce these terms to writing by executing a formal contract. The defen *238 dant did not, therefore, breach any fiduciary duty to the plaintiff.
B. Intentional Misrepresentation
Recovery in an action for the tort of misrepresentation requires a showing that the defendant knowingly made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage. Bond Leather Co., Inc. v. O.T. Shoe Mfg. Co., Inc., 764 F .2d 928, 935 (1st Cir. 1985). A misrepresentation is material if it is shown that the misrepresentation was one of the principal grounds, although not necessarily the sole ground, that caused the plaintiff to take the particular action that the defendant intended her to take as the result of such representations, and that otherwise, the plaintiff would not have taken such action. See National Car Rental Sys., Inc. v. Mills Transfer Co., 7 Mass.App.Ct. 850, 852 (1979); Zimmerman v. Kent, 31 Mass.App.Ct. 72, 78 (1991). The plaintiff must also prove that the defendant intended that the plaintiff would rely on the misrepresentation. See Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 445 (1976).
Here, the plaintiff has not shown that the defendant made any material misrepresentations upon which she relied to her detriment. The defendant fully and frankly discussed the possibility of opening a store in Boston, provided break-even projections for the business, and provided cash and valuable inventory to the store. The defendant honestly disclosed to the plaintiff the terms of the business arrangements and made an effort to reduce these terms to writing. The defendant also informed the plaintiff of the management fee and inventory costs. As discussed above, both parties entered into this endeavor with the hopes of making a profit. Both parties also had some degree of control in the set up and management of the business. This is not a situation where the defendant used false representations or concealed terms of the partnership in order to get the plaintiff to invest in the enterprise. Instead, this is a situation where both parties willfully and knowingly entered into a business partnership.

ORDER

It is therefore ORDERED that judgment enter for the defendant, Peter Fox on all counts of the plaintiffs complaint.

 P.F. Shoes of New York, Ltd. and Peter Fox Shoes California, Ltd. are both owned by Peter Fox Shoes, Ltd.

 McDonald’s sister has assigned all of her rights with respect to this action and the failed business endeavor to McDonald.

 According to Plaintiffs Proposed Findings of Fact No. 24, “the total investment of Michele and Kathryn McDonald was $57,567.94 ... of the total investment, $35,000.00 was in the form of a personal loan from the Shawmut Bank ..."

 This percentage of ownership is derived from the fax which reads:
The figures below represent the final amounts for determining the share distribution of BOSTON BRANCH:
P.F. Shoes of New York Ltd.
New York $90,749.45
California 18,552.53
[Total] 109,301.98
Michelle and Kelly McDonald $45,000.00
Since you wish to invest $45,000.00, the amount in excess of $45,000.00, which is $5,441.97 as of the 30th of April 1995, will be reimbursed to you as cash is available.
The following two alternatives to the 29% calculation are also possible: 1) the plaintiffs claim that she actually invested $57,567.94, would bring her ownership share up to 34.5%; and 2) the plaintiff invested $57,567.94, and is first entitled to the amount in excess of $45,000.00, minus $6,841.97 that she was already repaid, and then receives 29% of the assets. When using this alternative with the remaining assets of $44,600.00, the plaintiff would be entitled to $16,999.44.
However, as discussed below, neither of these alternatives affect the result as the plaintiff retained the shoes, an asset with a value in excess of any figure derived from the alternatives above. See footnote 7, supra.

 According to the March 31, 1996 Financial Statements as prepared by KPMG, $43,846 of the assets is defined as “due from related parties.” McDonald and her sister owe $25,245.00 in inventory and $4,486.00 in furniture, fixtures, and equipment. McDonald is allegedly owed $5,330.00. The net value of assets retained by McDonald is $24,401.00.

 Plaintiffs Proposed Findings of Fact No. 24 states that “the total investment of Michelle and Kathryn McDonald was $57,567.94 of which $6,841.97 has been repaid leaving a balance of $50,725.97.”

 The fact that McDonald was paid a salary and commission does not prevent the existence of a partnership between the parties. Boyer v. Bowies, 310 Mass. 134, 138-40 (1941); Fenton, 33 Mass.App.Ct. at 691 (the court held that a partner may receive compensation for services, provided there is an agreement to do so).

 The plaintiff states in her complaint and her Proposed Findings of Fact that the parties were involved in a de facto partnership. The plaintiff also testified that she expected to be partners with the defendant in this endeavor. The plaintiff claims that this was to be a limited partnership as opposed to a general partnership. This claim, however, must fail as G.L.c. 109, section 8, requires a limited partnership to be registered via a certificate filed with the Secretary of State for the Commonwealth. In situations where a limited partnership does not exist because of noncompliance with statutory requirements, a partnership must be assumed. See G.L.c. 109, section 62 (“In any case not provided for in this chapter, the provisions of the Uniform Partnership Act as provided in chapter one hundred and eight A shall control”).

 The plaintiff is only entitled to 29% of $44,600.00 or $12,934.00. Even under the alternatives suggested in footnote 3, supra, the plaintiff has received more than her percentage share of the assets.